JAMES B. POWELL, Plaintiff, *v.* HARRIET C. JENKINS et al., Defendants.*

(Supreme Court — Oswego Special Term, July, 1895.)

To constitute the possession of a subsequent grantee under an unrecorded deed notice to a mortgagee of her deed and title which will require him to make her a party to an action to foreclose his mortgage, such possession must be actual, open and visible, and must not be equivocal or consistent with the title of the apparent owner by the record.

Where the mortgagee has no knowledge of such deed, and both the grantor and grantee remain in occupation of the premises the same as before the deed was given, the grantee is not a necessary party to an action to foreclose the mortgage, but is bound by the proceeding and foreclosed thereby of all right in the property.

A husband who resides with his wife upon property owned by her may be considered as the occupant for the purposes of assessment.

A delivery to the county treasurer of a deed of property bought in by the county at a tax sale under the Oswego act of 1882 is sufficient to pass title.

Where property is bid in by the county on such a sale, the county treasurer is the proper person to give the notice to redeem.

Where husband and wife reside upon her property when the time for redemption expires, but before actual service of the notice the husband dies, service upon the wife is sufficient.

Section 73 of the General Tax Act of 1855 applies to a tax sale and title under the Oswego act of 1882 and makes the certificate of the county treasurer of filing of proof of service of notice and of failure to redeem a condition precedent to the vesting of title in the purchaser.

A deed of such lands executed by the chairman and clerk of the board of supervisors at the request of the county treasurer, without any action taken by the board, is a nullity and conveys no title to the grantee.

After a sale for taxes the owner of the premises gave a mortgage thereon, and, after service of notice to redeem, conveyed to her daughter. The mortgagee had no notice of the service of the notice to redeem nor of the deed, which was not recorded, and the occupation by the mother and daughter continued as before. Subsequently the daughter paid the tax and took a conveyance from the board of supervisors, the county having purchased at the sale. *Held*, that neither the mother nor the daughter could in that manner acquire a title which she could assert against the mortgage or the purchaser on the foreclosure thereof.

ACTION in ejectment to recover possession of real property in the city of Oswego, N. Y. The plaintiff and the defend-

---

* Received too late for insertion in proper place.—[REPORTER.

ant Harriet C. both claim to be owners of the property and entitled to possession.

The title was concededly in one *Irwin* February 1, 1862. Through various persons the title was conveyed August 17, 1866, to *Isaac G.*, the husband of the defendant *Rebecca C.* November 6, 1876, the husband deeded the property, through a third person, to his wife. She held the title until 1890, when, March thirteenth, a mortgage was given upon it to the Mercantile National Bank of Hartford, Conn., executed by both the husband and wife, to secure payment of a bond for $5,000, executed by the husband alone. This mortgage was foreclosed in 1892 by an action commenced April fourth and judgment entered June twentieth. The husband had died July 23, 1891, and only the widow was made a party defendant. The defendant *Harriet C.* was a daughter of the widow, and she and her mother both lived upon the property at the time of the foreclosure. The property was sold, under the judgment, April 8, 1893, and was bid in by, and deeded to, plaintiff the same day, and the sale was confirmed, by order of the court, November 18, 1893. Thereafter, and in November, 1893, plaintiff demanded possession of the property from both the widow and daughter. There was a refusal to surrender possession, and thereupon this action was at once brought.

September 24, 1891, the widow deeded the premises to the daughter, but this deed was never recorded. October 15, 1891, a deed of the property from the board of supervisors of Oswego county was given the daughter, but this deed was not recorded till December 16, 1892. March 23, 1892, another deed of the property from the board of supervisors of Oswego county was given the daughter, which was recorded three days later. The daughter claims to have taken possession of the property March 10, 1892, under her mother's deed of September 24, 1891.

These are the respective sources of title alleged by the parties and which are to be considered and passed upon.

*William H. Kenyon,* for plaintiff.

*L. C. Rowe* and *W. A. Poucher,* for defendants.

WILLIAMS, J. Before the foreclosure action was com- menced the widow had deeded whatever interest she had in the property to her daughter. If, therefore, the daughter has not been foreclosed, she is, under her mother's deed, still the owner of the property, subject, of course, to the lien of the mortgage. The deed from the mother to the daughter was not, however, recorded, and the mortgagee had no knowledge or notice of the deed until after the foreclosure was completed and the property was sold and purchased by the plaintiff in this action. It is provided by section 1671, Code Civil Procedure, that a person whose conveyance from a defendant is recorded subsequent to the filing of the notice of pendency of the action is bound by all proceedings taken in the action after the filing of such notice, to the same extent as if he was a party.

The daughter seeks to avoid the provisions of this section by claiming she took possession under her mother's deed before the filing of the notice, and before the action was commenced, and that such possession was notice to the mortgagee of her deed and title.

It is undoubtedly true that if the mortgagee knew, or had notice of, the daughter's deed and title before the action was commenced, and the notice was filed, he was bound to make her a party to the action, the same as though her deed had been recorded before the commencement of the action, and it is also true, very likely, that possession by the daughter, under her deed, might be such as to amount to notice of such deed and title. But the possession, in order to have this effect, must have been actual, open and visible, and not equivocal, nor must it have been consistent with the title of the apparent owner by the record. *Cook* v. *Travis,* 20 N. Y. 400.; *Brown* v. *Volkening,* 64 id. 76; *Pope* v. *Allen,* 90 id. 298; *Holland* v. *Brown,* 140 id. 344.

Supreme Court, July, 1895.       [Vol 14.

The principle, as applicable to this case, is well illustrated by *Pope* v. *Allen,* above. Plaintiff there claimed under the record title. Defendant claimed to be the real owner, and to have been in possession at the time plaintiff took his title. He claimed plaintiff's grantor was his agent and had taken title wrongfully, but it appeared, though defendant had built a house upon the premises at his own expense, and had moved into the house, and was in occupancy and possession thereof at the time plaintiff took his deed, yet, inasmuch as his agent lived with him before the house was built, and had moved into the house with him, and lived with him until he, the agent, died, therefore, the possession of the defendant was not such as to amount to notice of the defendant's title to the premises.

The court said : " Both, to all outside appearance, occupied the land, and which was the actual possessor, and which occupation was subordinate and under the other, could only be naturally inferred from knowledge of the title, and when it appeared from the record that (the agent) had the deed, the proper inference was that defendant's possession was under (the agent), and in subordination to the true title. * * * The defendant's possession was *equivocal,* and consistent with (the agent's) title on the record, since (the agent) was also in possession, and there was nothing to indicate that the defendant's possession was not subordinate to his (the agent's) or suggest hostility to the record title."

In this case it appears the Jenkins, husband and wife, with their children, including this daughter, lived upon this property from 1866 down to the death of the husband July 23, 1891, and then the widow and children, including this daughter, continued to live there until the trial of this action, except as business, at times, called some one or more of them away. It had all the time been the home of both the mother and daughter. They had kept boarders in the house before and since March, 1892, when the daughter claims to have taken possession. Both had worked about the house, as they had been able, both before and after the alleged change of pos-

session.   There had been little or nothing to indicate to an outsider who the mistress of the house as a residence or boarding house had been, no advertisement of the house in any one's name, no purchase of supplies on credit, so as to create an account in some one's name.   The house was run on a cash basis.   The possession was, therefore, equivocal at best, and to outsiders as consistent with the record title as in hostility to it.   Under these circumstances, in view of the principles of law referred to above, I could not conclude that any possession the daughter claims to have taken in March, 1892, was such as to constitute notice to the mortgagee of her deed or title to the property.

It results from the views here suggested that the record was properly relied on in the foreclosure action, that the daughter was not a necessary party, but was bound by the proceedings therein and was foreclosed of all interest she had in the property under the deed from her mother, the same as though she had been a party to the action.

The deeds from the board of supervisors, Oswego county, upon which the defendant *Harriet C.* also relies to defeat plaintiff's action, were not given in subjection to the mortgage foreclosed, but adverse to it.   The validity and effect of these deeds was not determined in the foreclosure action, and could not have been, except by the grantee in the deeds being made a party and consenting to such determination.   They must be considered and passed upon as original questions in this action.   *Cromwell* v. *MacLean*, 123 N. Y. 474.

These deeds were both quit-claim deeds, both recited the same consideration and both were evidently given to convey the same title acquired under the tax sale of January 2, 1889.

This sale was made pursuant to chapter 322, Laws of 1882. The property, when sold, was bid in for the county of Oswego at $110.40, under section 7 of that act.   Two years were allowed for redemption, as provided by section 8; and then, January 28, 1891, a deed was given to the board of supervisors, as provided by section 9.

Section 10 of the act provides that such a deed is *conclusive* evidence that the sale was *regular*, and *presumptive* evidence that all *previous proceedings* were *regular* according to the provisions of the act; that such a deed may be recorded like other deeds; but such conveyance of lands which shall, at the expiration of the two years given for the redemption thereof, be in the actual occupancy of any person shall, not be recorded until the expiration of a six months' notice to redeem, given in the same manner as required in case of lands sold by the comptroller, and the certificate of filing of evidence of the service of such notice shall be recorded with such conveyance. The provisions as to notice in case of lands sold by the comptroller are in section 68, chapter 427, Laws of 1855, as follows: That the grantee or person claiming under him shall serve a written notice on the person occupying the land, within two years from the expiration of the said time to redeem, stating, in substance, the sale and conveyance, the person to whom made, and the amount of consideration money mentioned in the conveyance, with the addition of thirty-seven and one-half per cent and the sum paid for the deed; and that unless such total amount shall be paid into the treasury for the benefit of the grantee within six months after the time of filing in the comptroller's office the evidence of the service of the said notice, the conveyance will become absolute, and the occupant and all others interested in the land be forever barred from all right or title thereto. The objection that the assessment was void because in the name of the husband instead of the wife, who had title to the property, I do not regard as well taken. The husband lived with the wife upon the property. He was the head of the family, and might well be regarded as the occupant for the purposes of assessment. The property could be properly assessed to the owner *or* the occupant. In addition to this it is provided by section 6, chapter 367, Laws 1876, that "No assessment of real estate in said city (Oswego) which shall be properly described in the assessment rolls of said city, and which shall be assessed

but once in said rolls, shall be deemed or held to be invalid by reason of the same not having been assessed to the real owner or occupant thereof, or of any mistake or error in the designation of the owner of said property, or of the same having been erroneously put among the resident or non-resident property of said city ; and any tax or assessment levied thereon, and the lien thereof, and all proceedings and sales shall be as valid and effectual thereunder as though the same had been properly assessed and such errors or mistakes had not been made." *Under* this statute, if not in the *absence* of it, this assessment, the levy of the tax thereunder, and the sale of this property for nonpayment thereof, must be held to have been valid. It is said there was no delivery of the deed to the board of supervisors, and, therefore, no title passed. It seems to me there was delivery so far as necessary to pass title under the circumstances. The treasurer of the county under the statute gave the deed, and although it was given, as provided by the statute, to the board of supervisors, the title was to be held by the board in trust for the county. The property belonged to the county, and it appears these deeds were usually kept in the treasurer's office. I do not think this objection to the title acquired by the board of supervisors well taken. It is further said the statute was not complied with as to the *notice to redeem* after taking the deed for the county, in that *no notice* was ever *served,* no *proof* of such *service* was ever *filed* in the *treasurer's office,* and no certificate of *filing* of *proof* of such *service* was ever made, nor was such certificate ever recorded with such conveyance. The conveyance itself was never, recorded, and no certificate was ever made that the property had never been redeemed. A notice in form complying with the statute was duly served upon the widow and mother September 22, 1891. It was signed by the county treasurer, and I think he sufficiently represented the county and the board of supervisors, so that he was a proper person to give the notice under this statute. The title to the property was in the county.

12

In form, the board of supervisors held the title, but merely in trust for the county. The treasurer represented the grantee in the deed. The two years allowed for redemption before the giving of the deed expired January 2, 1891. At that time the husband was living, and he and his wife were in the occupancy of the premises. The husband died July 23, 1891, and the widow remained in the occupancy of the premises until the time the notice was served, September 22, 1891. The grantee had two years from January 2, 1891, within which to serve the notice. If it was, under the statute, to be served upon the person who was in the occupancy of the premises at the time of the service of the notice, then certainly the widow was the proper person to serve upon, because she was then *the* occupant. If it was to be served upon the person in occupancy at the time the two years allowed for redemption expired, then both the husband and wife lived on the premises. She had the legal title, and I think was sufficiently the occupant within this statute to make service upon her a compliance with the statute. It could not, in September, 1891, be served upon the husband, in any event. On the same day the service was made the treasurer, who made the service, made his affidavit, in due form, of such service, and filed it and the notice in his office. So far the law was complied with, and there the matter stopped. No certificate by the treasurer of the filing in his office of such proof of service of notice has ever been made or recorded, nor has the conveyance itself ever been recorded, nor has the treasurer ever made any certificate that the property has *not* been redeemed, so far as appears. Were these things necessary in order to confer title upon the county and enable it, through the board of supervisors, to give good title to the daughter, *Harriet C. Jenkins?* There is *no express* provision in the Oswego act of 1882 as to what things must be done before the title under the tax sale shall become *absolute.* There *is* such a provision in the General Tax Law of 1855, hereinbefore referred to. Section 73 provides: "If the comptroller shall be satisfied by such copy (notice) and affi-

davit (as to service of notice) that the proper notice has been
duly served, and if the moneys required to be paid for the
redemption of such land shall not have been paid, as hereinbe-
fore provided, he shall, under his hand and seal, certify such
facts, and the *conveyance* before made *shall thereupon become
absolute,* and the occupant and all others interested in said lands.
shall be *forever barred* of *all right* and *title thereto,*" and this.
provision would seem to be applicable to the tax sale and title
in question under section 12 of the Oswego act of 1882, which
provides: "Where no provision is made in this act, all the
general laws of this state in relation to the assessment and col-
lection of taxes, the sale and redemption of lands sold for
taxes, and all matters relating thereto, shall, so far as they are
applicable, be in force in the county of Oswego.   *   *   *
When any authority is given or duly enjoined by those laws.
on the comptroller of the state, the same authority shall be
exercised and the same duty be devolved on the county treas-
urer of Oswego county."   So that the making of the certifi-
cates referred to is provided to precede the deed becoming
*absolute,* and the occupant and other persons being *barred* of
their *rights* and *title* to the property.   And under section 73.
of the act of 1855, and similar provisions in the original
Revised Statutes, and in the act of 1819, it seems to have
been held these certificates, and, perhaps, the recording of the
deed, *were* conditions precedent to the vesting of title in the
purchaser.  *Lockwood* v. *Gehlert,* 127 N. Y. 241, and cases.
there referred to.

It is said further that the deeds purporting to have been
made by the board of supervisors were nullities, because not.
made or authorized by such board.

Section 14 of the Oswego act of 1882 provides: "The
title acquired by the board of supervisors in pursuance of this.
act shall be held by them in trust for said county of Oswego,
and may be disposed of by them at such times, and on such
terms, as shall be determined on by a majority of such board,
at any regular or special meeting thereof."

There seems to have been no action of the board of super-

visors upon the subject, either at a regular or special meeting, authorizing the disposition of this property, or fixing the terms upon which it should be disposed of, or the manner in which the conveyance should be executed. The county treasurer seems, upon having received the amount of the taxes and percentage, etc., to which the county was entitled, the amount which would have been necessary to redeem, to have directed the chairman and clerk of the board, or those persons supposed to hold the positions of chairman and clerk, to execute the deeds, and they were executed accordingly. This could hardly be regarded as a compliance with the provisions of the statute referred to.

It is said this transaction between the *treasurer* and *Harriet C. Jenkins,* wherein the amount the county had in the property was paid, and deeds were given to *Harriet C.,* amounted in equity, as to the mortgage in question, merely to a redemption of the property and the extinguishment of the tax lien, and not to the vesting of any title to the property in *Harriet C.* as against the mortgage. The facts are not in dispute. *The mortgage was taken in ignorance of the prior sale for taxes, and the mortgagee apparently had no knowledge of the tax sale until after the time to redeem had expired.* If the mortgage had been in existence before the tax sale, notice to redeem would, under the statute, have had to be served upon the mortgagee; but the mortgage having been given after the tax sale, such notice did not need to be served, and was not served. The notice was served upon the mortgagor, the widow, the mother, who with her daughter *Harriet C.* occupied the premises. This notice was served September 22, 1891. The mother did not notify the mortgagee of the service of this notice, but, two days later, deeded all her interest in the property to her daughter *Harriet C.* Redemption could be made at any time before March 22, 1892. *Harriet C.* did not notify the mortgagee of the service of this notice, but, as she herself testifies, took the deed from the board of supervisors October 15, 1891, for the purpose of securing a title to defeat the mortgage. She did not

record either the deed from her mother or the board of supervisors, but kept them a secret from the mortgagee; and immediately upon the expiration of the six months allowed for redemption after service of notice upon the mother, and March 22, 1892, took the second deed from the board of supervisors, which she at once recorded. By these means it is claimed she secured a title which defeated the mortgage, and which should be upheld as against the deed given under the mortgage foreclosure.

In 25 Am. & Eng. Ency. of Law, 706, it is said : " One whose duty it is to pay the taxes may not, by neglecting to pay them, and allowing the land to be sold in consequence of such neglect, add to or strengthen his title, either by purchasing at the sale himself or by suffering a third person to buy and then purchasing from him. A purchase under such circumstances operates as a payment of the taxes, leaving the title in precisely the situation in which it would have stood had the payment been before instead of after the sale. * * * These principles are applicable to * * * a mortgagor in possession and parties claiming under him. Note 3. A mortgagor in possession, or parties claiming under him, cannot defeat the lien of the mortgagee by acquiring a tax title to the land." Citing many cases in other states, but none in the state of New York.

The principle underlying this doctrine is well settled and cannot be doubted. It has been frequently applied in this state to other titles than tax titles. The general rule is that a trustee cannot acquire a title as against his *cestui que trust*. The title will ensue to the benefit of and cannot be vested against the *cestui que trust*. This rule is not, however, confined to trustees and their *cestui que trust*, but applies universally to all who come within its principle, which is that no party can be permitted to purchase an interest in property and hold it for his own benefit where he has a duty to perform in relation to such property which is inconsistent with the character of a purchaser on his own account. *Torrey* v. *The Bank of Orleans*, 9 Paige, 649 ; *Van Epps* v. *Van Epps*, 9 Paige,

237; 7 Hill, 260; *Fulton* v. *Whitney*, 66 N. Y. 548–555; *Bennett* v. *Austin*, 81 id. 308–322.

The only question, therefore, is whether *Harriet C.*, the daughter, was under any obligation, as against the mortgage, to pay these taxes and to extinguish this tax lien. These taxes were assessed and levied, and the tax sale was made, while the mother was the owner of the property. Then she gave the mortgage and thus created a second lien on the property. Could *she* have purchased the title under the tax lien and have asserted such title against the mortgage? Certainly not. It was her duty, as between herself and the mortgagee, all the time to pay the taxes and extinguish the lien. No title could be acquired under the tax sale except by reason of a continued neglect of duty on her part to pay the taxes and redeem from the sale. I do not see how the daughter stands in any better position than the mother. She knew all about the mortgage and the tax sale before she took the deed from her mother and before she took her deeds from the board of supervisors. Indeed, she testifies her purpose in the whole matter was to defeat the mortgage lien. She paid her mother no substantial consideration. She kept the tax lien a secret from the mortgagee for the purpose of defeating the lien of the mortgage. The theory of the law is that when the occupant gets the six months' notice to redeem he will let all persons interested in the premises know about it; but in this case the mother and daughter, who were the occupants, deliberately planned to keep the matter from the mortgagee, for the purpose of defeating the mortgage. Had the mortgagee known of the lien, it would have paid up the lien and redeemed, to protect its mortgage. Indeed it tendered the money, after the six months had expired, as soon as it learned of the lien, or the purchaser did. I think the daughter acquired no further or greater rights in the property, by her mother's deed, than her mother had, and the same duties were devolved upon her, as against the mortgage, that rested upon her mother before the deed was given. And I must hold, therefore, that the deeds by the board of supervisors vested no

title in *Harriet C.* to the property which she could assert against the purchaser at the mortgage sale.

In view of the suggestions herein contained, I must order judgment for the plaintiff.

Ordered accordingly.