(91 Misc. Rep. 278)

SHELDON et al. v. RUSSELL.

(Supreme Court, Equity Term.  Cattaraugus County.  July, 1915.)

1. TAXATION ⚭734—TAX DEEDS—VALIDITY—ASSESSMENTS.
    Tax Law (Consol. Laws, c. 60) § 9, declares that real property owned
by a nonresident may be taxed to the owner or to the occupant if he be a
resident of the tax district.  Section 63 declares that the assessment shall
be deemed as against the real property itself, and the property shall be
holden and liable to sale for any tax levied upon it, error in the name of
the owner or occupant notwithstanding.  *Held* that, where several non-
residents of the district owned realty, the failure to assess the property
in the name of the several owners will not invalidate the tax, unless the
description of the real property was so inaccurate as to mislead the own-
ers and prevent them from ascertaining the existence of the assessment.
    [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1408, 1470–
1473;  Dec. Dig. ⚭734.]

2. TAXATION ⚭421—ASSESSMENT—VALIDITY.
    Where a parcel of land was known as No. 210 North Clinton street, and
in a well-known map was listed as block 147, an assessment against the
property as block 147, No. 210 North Clinton street, is valid, though the
property had been conveyed to the owners as block 146, another map being
referred to, and the owners, who were nonresidents, were not all named
in the assessment.
    [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 720–727, 729–
735;  Dec. Dig. ⚭421.]

3. TAXATION ⚭768—TAX TITLES—NOTICE OF TAX SALE.
    The certificate of the county treasurer, reciting that due notice of the
tax sale was served upon the occupant and certifying that the lands re-
mained unredeemed, being recorded with the deed, was a compliance with
Tax Law, § 134, requiring such notice to be recorded with the conveyance.
    [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1531, 1532;
Dec. Dig. ⚭768.]

4. TAXATION ⚭749—TAX TITLES—TAX SALES.
    Tax Law, art. 6, § 131, which deals with sales by the comptroller, pro-
vides that after one year from the sale the comptroller shall, after appli-
cation in writing therefor, execute to the owner of the tax certificate a
conveyance of any lands sold for taxes and not redeemed.  Section 154 of
article 7, relating to sales by county treasurers, declares that, if such real
estate be not redeemed as provided, the county treasurer shall execute to
the purchaser a conveyance.  Section 158 of article 7 declares that all
provisions of article 6, in so far as not otherwise provided, shall apply to
conveyances by the county treasurer.  *Held*, that section 131 did not apply
to conveyances by the county treasurer, as section 154 prescribes a con-
trary rule.
    [Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1496;  Dec. Dig.
⚭749.]

5. TAXATION ⚭734—TAX TITLES—VALIDITY.
    A tax title cannot be avoided because of the want of the county treas-
urer's certificate to the supervisor of the unpaid taxes.
    [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1408, 1470–
1473;  Dec. Dig. ⚭734.]

6. TAXATION ⚭734—TAX TITLES—VALIDITY.
    Nor will the want of the certificate of the supervisor of the completed
description of the premises avoid it.
    [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1408, 1470–
1473;  Dec. Dig. ⚭734.]

⚭For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

7. TAXATION ☞734—TAX TITLES—VALIDITY.
　　A tax title will not be avoided because of the want of the certificate of the county treasurer that he has examined and compared the collector's return with the tax roll.
　　[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1408, 1470–1473; Dec. Dig. ☞734.]

8. TAXATION ☞734—TAX TITLES—VALIDITY—TAX DEEDS.
　　Though Tax Law, §§ 138, 139, declare that the lien of a mortgage is not affected by a tax sale, and require the purchaser to give the mortgagee written notice of the sale within one year before expiration of the time to redeem, so that the mortgagee may redeem, the failure to serve notices on the mortgagee will not avoid the tax deed.
　　[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1408, 1470–1473; Dec. Dig. ☞734.]

9. TAXATION ☞776—TAX TITLES—DEEDS—CONSTRUCTION.
　　Land owned by several was sold for taxes. The deed recited that, so far as appears from the record, the title and interest conveyed is the title and interest of F. T., who was only one of the owners. Tax Law, § 154, requires that the conveyance shall include a specific statement of whose title or interest is conveyed, so far as appears on the record. *Held*, that the only interest passing was that specified in the conveyance.
　　[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1544, 1545; Dec. Dig. ☞776.]

Action by Jesse A. Sheldon and another against U. B. Russell. Judgment for plaintiffs in part.

Henry Donnelly, of Olean, for plaintiffs.
Hastings & Larkin, of Olean, for defendant.

BROWN, J. The lands in question were conveyed to the plaintiff by deed under the following description:

"All that tract or parcel of land situate in the village (now city) of Olean, county of Cattaraugus, and state of New York, and described on a map of said village made by T. J. Gosseline, Esq., as lots Nos. 4 and 5 in block No. 146."

In all of several mesne conveyances for more than 20 years this same description has been used, and it is technically correct. In 1910 and 1911 the assessors of the city of Olean assessed said lands for purposes of state and county taxation as follows:

"Names of taxable persons, Tarbell, Fred, et al., quantity and statement, description, ward 3, section ——, block 147, No. 210, Street, N. Clinton, acres 14/1000, value of real estate $900.00."

Taxes levied upon these assessments being returned as unpaid, appropriate proceedings were taken by the board of supervisors and the county treasurer of Cattaraugus county for the sale of the lands, resulting in two conveyances to the defendant, one in 1912 and one in 1913, in which the lands are described as follows:

"All that tract or parcel of land situate in the city of Olean, county of Cattaraugus, state of New York, being part of block 147 and known as No. 210 North Clinton street, bounded west by the block line; north by lands of C. P. Luthur; east by land of E. W. Bevier; south by land of Fred Tarbell, containing 14/1000 acres, more or less, Fred R. Tarbell being the owner or occupant as appears upon the assessment roll of 1910."

Plaintiffs attack the validity of these two deeds, and seek the judgment of this court declaring them to be void, for the reason, among others, that the description in the assessment rolls for the years 1910 and 1911 is inaccurate and misleading; that the owners of the lands by an inspection of the assessment rolls would not be apprised of the assessment as being an assessment of their lands; that it is so inaccurate that it was likely to mislead the true owners and prevent them from ascertaining that taxes were to be levied against their land.

From about 1897 to 1914 Fred R. Tarbell, Myron O. Tarbell, Mary E. Ackerly, Julia A. Merrill, and Anna E. Spring were the owners of the premises in question as heirs at law of Dana O. Tarbell, holding as tenants in common, all of whom were nonresidents of the tax district of the city of Olean; the premises being occupied by Paul Keysaw as a tenant, who resided upon the premises. With such ownership and occupancy, the premises were assessed to "Fred Tarbell et al." as above stated.

[1] By section 9 of the Tax Law as it existed in 1910 and 1911 the property must have been assessed to either the owners or the occupant, in the discretion of the assessors. It was not assessed to the occupant. The plaintiff contends that it was not assessed to the owners. The use of the name of "Fred Tarbell et al." as the taxable person in Ward 3, section ——, block·147, No. 210 North Clinton street, 14/1000 acres, value $900, was apparently used to indicate that Fred E. Tarbell and others were the owners, and as a further means of identifying the premises. If the use of the name of only one of several tenants in common, in connection with the equivalent term "and others," was an error in the name of the owners, it undoubtedly does not affect the validity of the assessment, for by the provision of section 63 of the Tax Law that very contingency was provided for. It appearing by the provisions of section 9 of the Tax Law that the assessment "shall be deemed as against the real property itself, and the property itself shall be holden and liable to sale for any tax levied upon it," it is clear that there was no necessity for the assessment against the owner, there was no personal liability to be created, and while the failure to use the correct name of each owner might be such a defect as to render void any tax assessed to the individual, yet for the purpose of charging the real estate an error in the name of the owner in the assessment does not invalidate any tax thereon, unless it can be said that such name is a part of the assessment, the description of the real property, and is so inaccurate as to mislead the owner and prevent him from ascertaining the existence of the assessment and consequent tax.

[2] When Laurel avenue was laid out through block 146 of the Gosseline map, the north boundary thereof was to the south of lots 4 and 5, and a surveyor, in making a map of the original block 146, with the new street through it, labeled the lands in block 146 that was south of Laurel avenue on a map known as the "Blackeslee Map" as block 146, and labeled the lands in the Gosseline block 146, that were north of Laurel avenue as block 147. This Blakeslee map was filed in Cattaraugus county clerk's office, was used by the city authorities of Olean, and was produced upon the trial from the office of the city

engineer. By it lots 4 and 5 of block 146 of the Gosseline map are in block 147 of the Blakeslee map. When the city authorities numbered the residences in pursuance of an ordinance, lots 4 and 5 of the Gosseline map became lot No. 210 North Clinton street. When the assessors in 1910 and 1911 used the description of the premises in question in the assessment of these years as No. 210 North Clinton street, in block 147, the same as it had been used at least since 1905, this exactly and correctly described the premises owned by the Tarbells, in which deeds they were described as lots 4 and 5 of block 146 according to the Gosseline map. In using the term "block 147, No. 210 North Clinton street," the assessors did not refer to any map, and there is no evidence that they intended to refer to the Gosseline map.

The fact that there is a well-known, duly authenticated map in general use in Olean referring to these premises as being in block 147, which is on file in the county clerk's office and used by the city authorities, is quite conclusive that the assessors, in using its term "block 147," were warranted in so doing; and when it is recalled that No. 210 North Clinton street is in fact the same lands claimed by plaintiffs through deeds conveying them as lots 4 and 5, block 146, according to the Gosseline map, and that these premises have had coupled with them in the assessment roll for many years the name of Fred Tarbell and others as owners, the conclusion is readily reached that the owners could not have been misled as to the fact of their property having been assessed, nor prevented by the manner of the assessment from discovering the existence of such assessment. Witnesses who speak of the premises by street and number refer to and use the term 210 North Clinton street. The tenant who occupied the premises more than 10 years spoke of them as No. 210 North Clinton street. It is not unwarranted to assume that the owners knew that the premises were known, numbered, and designated as No. 210 North Clinton street. It is believed that the provisions of sections 9 and 63 of the Tax Law completely answer all criticism made by the plaintiff as to the legality of the assessment. Collins v. Long Island, 132 N. Y. 325, 30 N. E. 835; Sanders v. Carley, 83 App. Div. 193, 83 N. Y. Supp. 106; Powell v. Jenkins, 14 Misc. Rep. 83, 35 N. Y. Supp. 265; Halsted v. Silberstein, 196 N. Y. 1, 89 N. E. 443; Haight v. New York, 99 N. Y. 280, 1 N. E. 883.

[3] Sections 134 and 135 of the Tax Law, by virtue of section 158, apply to sales by county treasurers. There is no requirement of these sections that has not been substantially complied with. The notice to the occupant was properly served. Halsted v. Silberstein, 196 N. Y. 9, 89 N. E. 443. Proper evidence of such service was filed with the county treasurer. The certificate of the county treasurer, reciting that due notice of the tax sale was served upon the occupant and certifying that the lands remained unredeemed, being recorded with the deed, was a compliance with the statute. In Halsted v. Silberstein, 196 N. Y. 18, 89 N. E. 443, a motion for a reargument was made upon the ground that the notice of tax sale and the evidence of the service thereof were not in fact recorded at all, and that the only paper recorded at the time of the deed was the certificate of the comptroller, and it was held that:

"The recording of the deed being prohibited until the proofs of the service of the notice to redeem had been made, and the time therein specified had expired, and the certificate of the comptroller to that effect had been given, the certificate became the evidence of the notice and the service thereof, which is required by the statute to be recorded in connection with the deed."

[4] Section 154 provides that:

"If such real estate * * * be not redeemed as herein provided, the county treasurer shall execute to the purchaser a conveyance," etc.

Section 131 of article 6 provides:

"After the expiration of one year from the time of sale the comptroller shall, after application in writing therefor * * * execute * * * to the owner of such (tax) certificate a conveyance of any lands so sold by him for taxes and not redeemed," etc.

There is no provision in article 7 for the application in writing for the tax deed. Plaintiff asserts that defendant's two deeds are void because executed by county treasurer without application therefor having been made in writing, claiming that the provisions of section 131 apply to deeds executed by county treasurer. By virtue of section 158 of article 7 of the Tax Law which provides that all of the provisions of article 6 of the Tax Law, which includes section 131, shall "in so far as it is not otherwise herein provided" apply to conveyances, etc., executed by county treasurer.

It is believed that the direction to the county treasurer in section 154 to execute the deed if such real estate be not redeemed is a provision otherwise than the directions to the comptroller in section 131 to execute a deed after application in writing. There is an inconsistency in the two provisions. Section 131 directs the comptroller, when lands have not been redeemed and after an application in writing therefor, to execute the deed. Section 154 directs the county treasurer, when lands have not been redeemed, to execute the deed. As was said in Morton v. Horton, 189 N. Y. 400, 82 N. E. 429, discussing section 120 of article 6 of the Tax Law, requiring notice to be published in the body of a newspaper and not in a supplement, and section 151 of article 7, requiring such notice to be published in a newspaper:

"It is otherwise provided in section 151, for that section contains no reference to the particular part of the newspaper in which county treasurers' notices of sales shall be published, although it is a part of the same statute which, in section 120, does make a specific direction in that behalf."

It might well be said that, section 131 requiring an application in writing and section 154 containing no such requirement, it is otherwise provided as to when the county treasurer can execute his deed. The defendant was therefore not required to make an application in writing to the county treasurer before his deed could legally be delivered to him.

[5-8] The objection to the collector's return of unpaid taxes, the want of county treasurer's certificate to the supervisor of the unpaid taxes, the want of the certificate of the supervisor of the completed description of the premises, the want of the certificate of the county treasurer that he had examined and compared the collector's return

with the tax roll, the failure to serve notices on the mortgagee, as required by sections 138 and 139 of the Tax Law, have all been carefully examined and considered, and they are found to be ineffectual as affecting in any manner defendant's deeds. Saranac Land Co. v. Roberts, 208 N. Y. 288, 101 N. E. 898; Bennett v. Robinson, 42 App. Div. 412, 59 N. Y. Supp. 197; People ex rel. Mohawk & M. Ry. Co. v. Garmon, 34 Misc. Rep. 350, 69 N. Y. Supp. 819; Colman v. Shattuck, 62 N. Y. 348; Ensign v. Barse, 107 N. Y. 329, 14 N. E. 400, 15 N. E. 401; Hennepin v. Schuster, 66 Misc. Rep. 634, 124 N. Y. Supp. 693; Wood v. Knapp, 100 N. Y. 109, 2 N. E. 632; City of New York v. Matthews, 180 N. Y. 41, 72 N. E. 629; Thompson v. Burhans, 61 N. Y. 52; Peterson v. Martino, 210 N. Y. 412, 104 N. E. 916; Caulkins v. Chamberlain, 37 Hun, 163; People v. Metz, 141 App. Div. 600, 126 N. Y. Supp. 986; Ostrander v. Reis, 206 N. Y. 448, 100 N. E. 37; People v. Ladew, 189 N. Y. 355, 82 N. E. 431; Bennett v. Kovarick, 23 Misc. Rep. 73, 51 N. Y. Supp. 752; Lawton v. City of New Rochelle, 114 App. Div. 883, 100 N. Y. Supp. 284.

[9] By the express terms of section 154 the county treasurer in the description of the real estate is required to include "a specific statement of whose title or interest is thereby conveyed so far as appears on the record." In compliance with this requirement, the county treasurer, in the defendant's deeds, immediately following the description in each deed, inserted the following provision:

"So far as appears from the record, the title and interest hereby conveyed is the title and interest of Fred Tarbell."

Such being the statute and the compliance therewith, the holding must be that the defendant's deeds are valid as a conveyance as against the plaintiffs and their grantors of one undivided fifth of the premises therein described. The plaintiffs purchased the premises in question at a public sale with full knowledge of the defendant's deeds. They certainly were not misled by the manner of the assessment. There is no proof that the owners were misled by such assessment.

The plaintiffs must have judgment declaring that defendant's deeds do not affect the right, title, or interest of Myron O. Tarbell, Mary E. Ackerly, Julia O. Merrill, and Anna E. Spring in the premises in question. The defendant must have judgment establishing the validity of his two deeds as a valid conveyance to him of the undivided one-fifth interest in said premises formerly owned by Fred R. Tarbell.

Neither party succeeding upon the issues litigated, no costs are awarded. Let findings be prepared.