In the Matter of EDWARD BLATNICKY, Petitioner, against S. J. CIANCIMINO, as County Treasurer of Rockland County, Respondent.

Supreme Court, Special Term, Rockland County, September 27, 1954.

*I. Robert Broder* for petitioner.

*Stephen G. Doig, Jr.,* for respondent.

EAGER, J. The petitioner herein applies under article 78 of the Civil Practice Act, for an order directing the County Treasurer of Rockland County to issue a tax deed '' pursuant to a tax sale certificate issued to the petitioner on the 18th day of October, 1948 ''. The certificate bore the Number 17 and certified the sale to petitioner of a 49% interest in the realty for the unpaid State and county taxes of 1947.

On May 6, 1947, Stephen Harring, the owner of the realty and the person to whom it stood assessed on the books, died intestate and the realty descended to his heirs and distributees (Decedent Estate Law, §§ 81, 83). On September 11, 1947, the petitioner became a member of the military forces of the United States by his enlistment in the United States Marine Corps and was on active duty thereafter continuously until some time just prior to February 18, 1954. It does not appear whether he was or was not overseas in October 18, 1948, but he personally bid, or someone, as his agent, bid for him, at the tax sale on October 18, 1948, at which the 49% interest of the heirs and distributees of Stephen Harring, deceased, was sold and the certificate was issued in petitioner's name. He says that, '' I have been unable to make a personal demand upon the County Treasurer for a tax deed since I was on active duty in Korea and upon the termination of hostilities, I was transferred aboard an aircraft carrier where I remained until February, 1954, when I received an emergency transfer to New York so that I could properly take care of my property.'' He does not explain when he went overseas. The respondent, in his answer, says the petitioner made application for a tax deed for the first time on February 18, 1954, but no one explains whether or not the application was in writing. His mother alleges that she had applied for him, orally, three times, once in June, 1950, again in March, 1951, and a third time in May, 1952, and was refused because a valid redemption had allegedly been made. She says that, pursuant to her son's instructions, she paid all the taxes on the property to the County Treasurer. It appears, however, that on December 2, 1948, one month and twenty-one days after the tax sale of October 18, 1948, Shankey and Rider, Esqs. (attorneys at law), redeemed from the sale under which the certificate had been issued, by payment to the County Treasurer of the sum

of $14.45 comprising $14.34 paid by the petitioner, and 11¢ interest to the date of redemption.

The application here is clearly for an order in the nature of mandamus to require the County Treasurer to perform a duty claimed to be specifically enjoined upon him by law, that is, by section 154 of the Tax Law. Most of the denials in the answer are really denials of conclusions of law and the facts therein denied are comparatively insignificant. The essential facts appear from the papers and are not denied in the answer and no reply was served.

The following questions are presented here for determination, to wit: (1) Could Shankey and Rider, attorneys, validly make a redemption as and when they did, and was their attempt to make a redemption valid; and (2) did the petitioner seasonably and in the manner required by statute make a demand for a tax deed upon the County Treasurer subsequent to one year after the last day of the sale?

We may begin with the rule of law that the right to redeem land sold to enforce the collection of taxes assessed against it, is purely statutory and wholly in the discretion of the Legislature (*Levy* v. *Newman,* 130 N. Y. 11, 13; *People ex rel. Quaranto* v. *Moynahan,* 148 App. Div. 744, affd. 205 N. Y. 590). And it seems established as a general rule, that a person without any title or interest in the realty may not redeem for himself or the benefit of one not having a title or interest. The words '' any other person '' used in a tax sale statute to describe a person authorized to redeem has been held not to authorize redemption for the benefit of a stranger to the title. (*People ex rel. Marsh* v. *Campbell,* 143 N. Y. 335, 338; see, also, *Long Island R. R. Co.* v. *City of New York,* 64 N. Y. S. 2d 391.) On the other hand, there can be no rational objection to redemption by a stranger as a volunteer for the benefit of the owner. A volunteer may pay any other debts of a landowner and take the risk of no repayment. Why not taxes? The debtor is not obliged to repay but, if he wishes to ratify and confirm and make repayment, that should be his affair, not that of the purchaser at a tax sale. Who can be injured thereby?

Then, too, it was apparently the intention of the Legislature, by virtue of amendments to the Tax Law, to allow any person to redeem for the owner. In 1930, section 152 of the Tax Law providing for the redemption from tax sales by a County Treasurer began as follows: '' § *152. Redemption.* The owner, occupant or any other person having an interest in any real estate

sold for taxes as aforesaid may except in the county of Suffolk redeem the same ''. (See L. 1928, ch. 738.) The section had been cast in that form since at least section 33 of chapter 711 of the Laws of 1893. On March 17, 1930, section 152 was amended by chapter 99 of the Laws of 1930, to begin as follows: '' § *152. Redemption.* The owner, occupant or any other person may except in the county of Suffolk redeem any real estate sold for taxes as aforesaid ''.

Now, '' In considering the meaning and effect of an amendatory act, it is desirable to have in mind the previous condition of the law on the subject. Not only does the prior statute explain the meaning of the amendment thereto, but the amendment may be useful as an indicia of the legislative intent in the enactment of the prior statute, for a change in the wording of a statute generally indicates a change in meaning.'' (*People* v. *Gravenhorst,* 32 N. Y. S. 2d 760, 764. See, also, citations under § 192, n. 10, 11, p. 265 of Vol. 1 McKinney's book on '' Statutes '' and their interpretation, and citations in the same, under § 193, n. 17, 18, 19, 20, pp. 266, 267; § 194, n. 30, 31, p. 269.)

It will be observed that this 1930 amendment to section 152 of the Tax Law omitted the words previously in the statute, '' having an interest in any real estate sold for taxes as aforesaid '', which had followed the words '' any other person '', and substituted for the words '' the same '', which had followed the word '' redeem '', the words, '' any real estate sold for taxes as aforesaid ''. Section 127 of the Tax Law, which dealt with lands sold for taxes by the Department of Taxation and Finance, had contained language similar to that in section 152 and on March 21, 1932, by chapter 335 of the Laws of 1932, section 127 was amended in a somewhat similar manner to omit from the section the words, '' having an interest therein at the time of the sale '', which followed the words, '' any other person ''.

It is difficult to imagine any legislative purpose and intent other than to throw open to redemption by '' any other person '' without limitation the lands sold for taxes. By that, it does not necessarily follow that it was intended to allow a stranger to a title to redeem *solely for his own benefit,* but it is believed that the intention was to allow a stranger with or without authorization to redeem for the benefit of the owner or occupant and of himself to *whatever extent his interest might then appear.* If he had no interest, the redemption cancelled the sale and left the title in the owner or occupant where it had been theretofore. If he had any interest in the property, the redemption entitled

him to proceed to protect any interest he had in the property and entitled the owner or occupant to take advantage of the redemption, whether the redeemer had an interest or not.

Thus, in the present case, if it proves that Shankey and Ryder, Esqs., had some interest themselves in the property, their redemption can stand for the benefit of them and the owner. If they had no interest, then they have redeemed for the owner and they could do this without prior authorization from the owner. The owner or occupant may, of course, decide not to take advantage of their action and may refuse to ratify it if it was not authorized. We need not inquire here what would be the result of such circumstances. Here, the heirs to whom the realty of Stephen Harring had descended at Harring's death, May 6, 1947, had apparently authorized Shankey and Ryder, Esqs., to redeem for them, but whether or not Shankey and Ryder, Esqs., were actually authorized to act for them at the time of the redemption, December 2, 1948, or their unauthorized act was ratified later, the end result is entirely the same.

Now, coming to the second question, it is concluded that the requirement of section 131 of the Tax Law that a purchaser on a sale must apply in writing to the Department of Taxation and Finance for a conveyance of the land sold by the State for taxes within four years of the end of the redemption year or lose all claim under his tax certificate and purchase is imported, by the provisions of section 158 of the Tax Law, into tax sales by the County Treasurer under section 154 of the Tax Law. (*Sheldon* v. *Russell,* 91 Misc. 278, 285, holding to the contrary is not followed.)

It has been repeatedly held that county tax sales are subject, under section 158 of the Tax Law, to various provisions of section 131 of the Tax Law not repeated nor paraphrased in section 154 nor in any other section in article 7 (the article in relation to sales by County Treasurers). Thus *Robbins* v. *Abrew* (275 N. Y. 233, 237) supports this; and *Callahan* v. *Underwood* (260 App. Div. 352, 354, affd. 285 N. Y. 620) reveals the Third Department saying after it had just cited section 131, " All of the sections cited herein are made applicable to tax sales by county treasurers under section 158." The Fourth Department, in *Marchitelli* v. *Harbatowski* (273 App. Div. 1059), even held that section 158 made the provisions of sections 131 and 132 applicable to Niagara County. This is reaffirmed by the Third Department in *Lee* v. *Farone* (261 App. Div. 674). *Cone* v. *Lauer* (131 App. Div. 193, 198, appeal dismissed 198 N. Y. 597) was an early case taking this position.

It is true that these cases are not specific authority or precedent for the importation of the requirement of written application within four years into section 154 of the Tax Law from section 131 of the Tax Law by section 158 of the Tax Law. State Comptroller Tremaine, however, in 1928, in *Matter of Tax Sale Deeds to County Treasurers* (38 N. Y. St. Dept. Rep., 196, 197–198), said in reply to a request for advice from a County Treasurer on other subjects: " The county treasurer should not make a deed to a tax sale purchaser unless and until the purchaser makes application in writing to the county treasurer for a deed. This application must be made within four years after the expiration of one year from the last day of the sale. Tax Law, § 131. If no application is made and no deed delivered the interest of the tax sale purchaser lapses and the owner of the fee benefits." In 1943, the Attorney-General in an informal advisory opinion (see 1943 Atty. Gen. [Inf.], 43, 46, 47) held, that the provisions in relation to the four years in section 131 was imported into section 154 by the provisions of section 158 in relation to a tax sale to the county itself, and said: " I am of the opinion therefore, that the County Treasurer is barred by the provisions of said section 131 of the Tax Law from issuing a tax deed to his county more than five years having passed since the tax sale."

It is to be noted, too, that section 154 of the Tax Law was amended by Laws of 1946 (ch. 819) to insert the following: " The exception of the state from the limitations provided in section one hundred thirty-one of this chapter in respect to the time within which application may be made for conveyance of the land described in any certificate of sale applies with equal force and effect in favor of any county in respect to purchases made for such county." It seems clear, that the Legislature, in enacting this amendment, thought the county was not excepted from the provisions of section 131 referred to, and that it had in mind some decisions or administrative opinions of that kind. To remedy this, said chapter 819 of the Laws of 1946 was passed and *the counties* thereafter excused on their purchases at their own sales from the necessity to file application in writing within four years of the expiration of the redemption period.

If it were necessary to excuse the counties specifically, it is believed that the Legislature must have concluded that every private individual (other than the record owner) was subject to the provisions of section 131 requiring an application in writing within the four-year period. The requirement of an

application in writing by the purchaser for a deed makes sense, and legislative enactments are to be construed with that end in view. If the application must be in writing, the form thereof may elicit information which the County Treasurer should have when he gives the deed, without too great a burden of investigation on him. If he provides no form and accepts a mere letter of request, he, at least, has the signature and address of the person to whom he gives the deed, the date of the application and on the envelope the date it was mailed. The written application thus provides a permanent record of this information and of the application and would aid a court materially later, perhaps, when controversies develop. The County Treasurer could, of course, as many of them undoubtedly did, disregard the requirement of application in writing and give a deed, but this defect in the procedure might later have unsettled a title, since there is no rational ground on which to say that the Legislature at first intended the county to be bound by the requirement of an application within four years after the redemption period but not by the provision that the application should be in writing. The language of the statute is that the purchaser " must make application in writing * * * within four years ". It then provides that if application " is not made as herein provided the certificate shall become void, and no claim can be maintained under the purchase." (Tax Law, § 131.) The Department of Taxation and Finance is expressly limited in its power to give a deed after one year from the sale by the words " after application in writing therefor ". It is not reasonable to hold that the County Treasurer was intended to have greater liberty or discretion.

If the petitioner then was bound to apply in writing within the four-year period in order to obtain his deed, is he excused therefrom by any of the provisions of the U. S. Soldiers' and Sailors' Civil Relief Act (U. S. Code, tit. 50, Appendix, § 501 *et seq.*) or of the New York State Military Law (§ 300 *et seq.*)? In the opinion of the court, the answer is no. The requirement of the Tax Law that the owner of a certificate of tax sale apply in writing within four years after the expiration of the redemption period for a deed of the property is not believed to be a law " for the bringing of any action or proceeding in any court, board, bureau, commission, department or other agency of government of this state or any of its governmental subdivisions by or against any person in military service ", so as to come within the provisions of section 308 of the Military Law or

similar provisions of U. S. Soldiers' and Sailors' Civil Relief Act. Obviously, the County Treasurer is an agent of Government of a county which is a subdivision of the State, but an application for a tax deed is neither an action nor proceeding. The petitioner also refers to section 305 of the Military Law (see, also, U. S. Code, tit. 50, Appendix, § 522), but in the opinion of the court, the requirement for written application for a tax deed within four years of the end of the redemption period is not an obligation of the kind described in said section. In fact, it is not an obligation at all. It is simply a condition precedent to the right to the deed which the holder of the tax certificate may or may not perform at his option. If he does not perform, of course, he loses the tax title and the money paid therefor but, if this is a penalty or a fine, it is not incurred for an omission to perform an obligation, but merely for an omission to comply with conditions precedent to a right to a deed.

Petitioner also refers to section 325 of the Military Law asserting the paramount nature of the Relief Act, and to section 318 which declares it as the public policy of the State that citizens and residents should not be discriminated against because they are subject to military service and that employers should not refuse to employ persons because they are subject to military service. In the opinion of the court, the general language of these sections does not apply to expressly extend the time limit in which petitioner was to apply in writing for a tax deed. There is no discrimination here against the petitioner in consequence of his military service. It is to be noted that the petitioner's mother was able to ask three different times for a deed and could have applied in writing for him. In addition, he voluntarily bought at the tax sale over a year after he had entered the military service and with the full knowledge that his military service might interfere with his application for a deed.

Therefore, the application is denied and the petition is dismissed, first, because a valid redemption was made, and second, because, even if a valid redemption had not been made, no application for a tax deed was made in writing within the time specified by the Tax Law, which, in the opinion of the court, is a condition precedent to the right to receive the deed.

Submit order on notice.