### O'BRYAN v. STATE.

(Supreme Court, Appellate Division, Third Department. December 28, 1911.)

1. BRIDGES (§ 40*)—STATUTORY PROVISIONS—TRACTION ENGINE—NEGLIGENCE.
    Highway Law (Consol. Laws 1909, c. 25) § 331, effective February 17, 1909, exempts a town from liability for damages caused by the fall of a bridge while a traction engine, or any vehicle or load weighing eight tons or more, is upon it. A traction engine weighing four tons and a half, upon which plaintiff's intestate was riding, May 31, 1909, fell through a state bridge which had been built about 1896 and repaired in 1907 by a day laborer who had little experience as to bridge work, and

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

after the fall it was seen that the old sleepers were decayed and that the new ones were splintered. Defendant showed no reason why it could not have rebuilt or strengthened it subsequent to the operation of the highway law, or the giving of any notice of its weakness. *Held*, that, even assuming that the statutory load was applicable to a state bridge, the death of the intestate was due to the state's negligence.

[Ed. Note.—For other cases, see Bridges, Cent. Dig. § 86; Dec. Dig. § 40.*]

2. BRIDGES (§ 44*)—ACTION FOR INJURIES—CONTRIBUTORY NEGLIGENCE.

Where one riding upon a bridge on a traction engine the weight of which did not exceed five tons had no notice of the weakness of the bridge, and had reason to believe that the state had performed its duty and that the bridge was reasonably safe for the load, fell through the bridge and was killed, he was not guilty of contributory negligence.

[Ed. Note.—For other cases, see Bridges, Cent. Dig. §§ 91–94; Dec. Dig. § 44.*]

Appeal from Court of Claims.

Action by Lina O'Bryan, administratrix of the estate of Orian O'Bryan, deceased, against the State of New York. Judgment for defendant (68 Misc. Rep. 618, 125 N. Y. Supp. 490) and plaintiff appeals. Reversed on law and fact, and new trial granted.

The traction engine upon which the plaintiff's intestate was riding fell through the bridge over the old Chenango Canal, which is a feeder of the Erie Canal, at Pecksport in the town of Eaton. The bridge was a truss bridge resting upon two abutments which were about 25 feet apart. A needle beam ran across the bridge in the center, and from it sleepers 3 or 4 inches thick and 8 inches wide extended from the needle beam to the abutment on either side. The roadway was 12 feet wide, and there were 10 or 12 of these sleepers sustaining the floor of the bridge. The bridge was originally built in 1896 or 1897, and in 1907 was repaired by a day laborer who had but little experience or knowledge with reference to bridges. He put five new sleepers on each side of the needle beam, putting them in between the old sleepers. The bridge was then planked with three-inch plank. The new sleepers were hemlock, and after the bridge fell it was found that some of them were splintered, being wide at one end and sharp at the other. The old sleepers were pine, and some were broken off in the middle and some near the ends and were found quite rotten. Some you could pull apart with your fingers. The engine weighed about 4½ tons. The intestate, weighing 180 pounds, was on it at the time of the fall. The intestate with the road commissioner, was at work upon the roads, and when they came to the bridge they placed some plank lengthwise along it for the wheels of the engine to run upon to prevent their crushing into the plank and to strengthen the bridge.

Argued before SMITH, P. J., and KELLOGG, HOUGHTON, SEWELL, and BETTS, JJ.

J. A. Johnson (C. A. Hitchcock, of counsel), for appellant.
The Attorney General (Wilbur W. Chambers, Deputy Atty. Gen., of counsel), for the State.

JOHN M. KELLOGG, J. [1] The evidence indicates that the death of the intestate came from the negligence of the state in not properly maintaining the bridge. It had been built for years. There was no proper inspection, and it was repaired by a common day laborer who had no practical knowledge or experience in constructing or repairing bridges. Some of the old sleepers were rotten, some of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the new ones were cross-grained hemlock, and, unless the statutes about to be referred to relieve the state from liability, it is clearly responsible for the death of the intestate. It may be questionable whether the statutes furnish immunity to the state or any person or corporation maintaining a bridge other than the town itself. Bush v. D. L. & W. R. R. Co., 166 N. Y. 210, 59 N. E. 838. But we may assume for the purposes of this case that the statutory "load" applies to a state bridge which is used as a part of the highway system.

Chapter 210 of the Laws of 1890, which was an amendment of chapter 526 of the Laws of 1887, exempts a town from liability for damages by the fall of a bridge while a traction engine of the weight of five tons or over, exclusive of fuel and water, is upon it. Section 154 of chapter 568 of the Laws of 1890, the highway law, being chapter 19 of the General Laws, exempts a town from liability for damage by the fall of a bridge while any vehicle and load together weighing four tons or over is upon it, and this latter statute purports to repeal chapter 526 of the Laws of 1887 and the acts amendatory thereof. Chapter 1 of the General Laws (Laws 1892, c. 677), known as the statutory construction law, by section 13 provides that no provision of any chapter of the revision of the General Laws of which that chapter is a part shall supersede or repeal by implication any law passed at the same session of the Legislature at which such chapter was enacted, and that an amendatory law passed at such session shall not be deemed repealed unless specifically designated in the repealing schedule of such chapter. As chapter 210 is not specifically designated in the repealing schedule, we may infer that it survived. Therefore at the time this bridge was constructed the ordinary highway bridges of a town were expected to support a traction engine of a weight less than five tons and any other vehicle and load of a weight less than four tons. It is urged that the scraper trailing behind the engine was partly or entirely upon the bridge, and that it is not apparent that the entire weight was not five tons or more. It is not very material for the reason that at the time of the accident the limit of the load was eight instead of five tons.

The highway law (chapter 30, Laws of 1909 [Consol. Laws 1909, c. 25]) was a consolidation of the previous laws upon the subject, and section 331 exempts a town from liability for damage caused by the fall of a bridge while a traction engine or any vehicle or load weighing eight tons or over is upon it. This section became effective February 17, 1909; the bridge fell May 31, 1909, or 104 days thereafter.

[2] It is urged that, when the state was called upon to rebuild or strengthen its numerous bridges connected with the highway system of the state, a neglect to repair this bridge for 104 days was not a negligent act, and that the state violated no duty in allowing the bridge to remain in its former condition for that length of time. I think otherwise. While undoubtedly the state had many bridges to rebuild and strengthen, it has great resources at its command and should not be permitted to shirk its duty to the public. If for any reason (none is shown) it was unable to reconstruct this bridge within the time, it clearly was able to give to the public some reasonable notice that the bridge was not able to sustain the statutory load. The in-

testate, without such notice, had reason to believe that the state had performed its duty, and that the bridge was reasonably safe for the load which he was putting upon it, which the evidence indicates did not exceed five tons. It cannot be said, under all the circumstances, that the intestate was guilty of contributory negligence which brought about or contributed to his death. The judgment, therefore, should be reversed upon the law and the facts, and a new trial granted.

Judgment reversed on law and facts, and new trial granted, with costs to appellant to abide event. All concur.