THE CITY OF NEW YORK, Respondent, *v.* MARTIN J. EVERY and Others, Assessors of the Tax District of the Town of Olive, Ulster County, New York, and Another, Appellants.

THE CITY OF NEW YORK, Respondent, *v.* T. S. LENNOX and Others, Assessors of the Tax District of the Town of Hurley, Ulster County, New York, and Another, Appellants.

THE CITY OF NEW YORK, Respondent, *v.* LORIN C. CODDINGTON and Others, Assessors of the Tax District of the Town of Marbletown, Ulster County, New York, and Another, Appellants.

Third Department, February 18, 1931.

*John W. Eckert* and *Robert G. Groves*, for the appellants.

*Arthur J. W. Hilly* [*Frank T. Fitzgerald* of counsel], for the respondent.

WHITMYER, J.   An injunction is sought in each action against the sale of plaintiff's properties in the towns of Olive, Hurley and Marbletown, in the county of Ulster, which is a Forest Preserve county, for unpaid taxes for the year 1929, until such time as the said properties have been reassessed or returned to the State Department of Taxation and Finance or, if the county treasurer has the power to sell for unpaid taxes, until said taxes shall remain unpaid for one year from February first, following the year in which they were levied.

It is claimed (1) that the county treasurer of the county is without authority to sell the properties, under section 150 of the Tax Law; (2) that unpaid taxes must be reassessed until returned to the Department of Taxation and Finance, under · section 89; and (3) that the sales must be made under section 120, for the reason that Ulster county is a Forest Preserve county not enumerated in section 150.

No question is raised about the right and power to assess and tax the properties.

Defendants have not answered, but claim that the county treasurer has the power to sell and that he is required to sell after the expiration of six months from February first, following the year in which the tax is levied.

On grievance day, in 1929, plaintiff duly objected to the assess-

ments in each of the towns on the grounds of illegality, inequality and overvaluation, but the taxes were levied, without any changes.

Proceedings were then instituted by plaintiff, under article 13 of the Tax Law, to review by certiorari, but no hearings have been held.

The taxes, which were levied, were not paid at the expiration of six months from February 1, 1930, and the county treasurer commenced to advertise for a sale.

Plaintiff obtained a stay, which was vacated, and, when the county treasurer started to readvertise, these actions were commenced and the orders, appealed from, were granted.

Prior to March 6, 1928, when chapter 251 of the Laws of 1928 became effective, the Tax Law required that sales of land for unpaid taxes, in certain Forest Preserve counties, including the county of Ulster, should be made by the State Comptroller and, later, by the State Department of Taxation and Finance. That act marked the final change in a policy and, from that time on, sales in every county were to be made by the county treasurer of the county. The changes are set forth somewhat confusingly, but the purpose is clear.

Section 100 of the Tax Law was amended by adding a sentence as follows: " Accounts of unpaid taxes levied in the year nineteen hundred and twenty-seven and thereafter, however, shall not be returned or transmitted to the Department of Taxation and Finance, under the provisions of this section, any other provision of law to the contrary notwithstanding."

Next, section 150 of the Tax Law was amended by inserting the provision " or when any tax levied on real estate in the year nineteen hundred and twenty-seven and thereafter in any other county * * * " after the words " Forest Preserve," so that it now provides, so far as material, as follows:

" § 150. When lands to be sold for unpaid taxes. Whenever any tax charged on real estate, in the counties of St. Lawrence, Essex, Delaware, Franklin, Fulton, Hamilton, Lewis, Clinton, Warren, Washington and Oneida, or in a county not including a portion of the Forest Preserve, or when any tax levied on real estate in the year nineteen hundred and twenty-seven and thereafter in any other county, is returned to the county treasurer, he shall not return the same to the Department of Taxation and Finance, but if such tax, with interest thereon at the rate of ten per centum per annum, computed from the first day of February, after the same is levied, shall remain unpaid for six months from that date, such county treasurer shall advertise and sell such real estate as herein provided for the payment of such tax and interest and the expenses of such sale."

Section 151 of the Tax Law relates to " advertisement and sale " and provides that " the county treasurer shall immediately after the expiration of such six months cause to be published at least once in each week for six weeks, in two newspapers * * * a notice that such real estate will, on a day at the expiration of said six weeks specified in such notice, * * * be sold * * *." The section was amended by omitting the provision empowering certain counties, which were named, and the counties of the State other than those in the Forest Preserve to acquire and hold such lands and by providing as follows: " All counties of the State are empowered to acquire and hold such lands. Within twenty days after the time for redemption has expired the county treasurer of any Forest Preserve county shall file with the Department of Taxation and Finance a certified statement of all tracts or parcels of land situate in the Forest Preserve which have been bid in by the county and have not been redeemed, and shall sell and convey to the State any tract or parcel of land specified in such statement " as designated by the department, within six months after the filing of the statement, upon the payment of the taxes, interest and expenses due, etc.

Further, the last sentence of the section now provides that " after the expiration of such six months, in any Forest Preserve county, and after the time for redemption has expired in any other county, the county treasurer is authorized in the name of the board of supervisors of the county to sell and convey under his hand and seal such lands as have not been conveyed to the State in the manner and upon such terms as the board of supervisors of the county may direct."

It is clear that the Legislature intended by the changes to provide a uniform system of tax sales by requiring, in effect, that sales in every county should thereafter be made by the county treasurer thereof. Additional co-ordinate changes were effected on April 6, 1928, by chapter 845 of the Laws of 1928. (See, also, Laws of 1928, chap. 132.)

The former provisions as to sales by the State Department of Taxation and Finance (Tax Law, §§ 101–109, 119–144) could not be repealed by the new acts, for the reason that the procedure for the sales for the unpaid taxes for 1926 had not been completed at this time. This is shown by section 120.

And section 88-a (added by Laws of 1913, chap. 666, as amd. by Laws of 1916, chap. 323) and section 89 (as amd. by Laws of 1928, chap. 845) relate to taxes erroneously assessed and so, necessarily, reassessed, while the provision, in the last sentence of section

89, that the unpaid tax shall bear interest until its return to the Department of Taxation and Finance, if the property is located in a Forest Preserve county, applies to taxes assessed before 1927.

Section 120 of article 6 of the Tax Law (as amd. by Laws of 1928, chap. 845), which authorizes a sale by the Department of Taxation and Finance " if such tax and the interest thereon, or any part thereof, shall remain unpaid for one year after February first, following the year in which the tax was levied," does not apply.

This is shown by section 158 of article 7 (as amd. by Laws of 1928, chap. 845), which provides that article 6 of the Tax Law shall govern and control the action of the county treasurer " in so far as it is not otherwise herein provided." " Herein " refers to article 7, in which are included sections 150 and 151, already considered, and which provide a complete scheme. (*Morton* v. *Horton*, 189 N. Y. 398, 400; *Sheldon* v. *Russell*, 91 Misc. 278, 285.)

Chapter 251 of the Laws of 1928, effective March 6, 1928, was not repealed by chapter 845 of the Laws of 1928, effective April 6, 1928.

The acts were passed by the same Legislature and became effective one month apart. The title of the former is " An Act to amend the Tax Law, in relation to the return of unpaid taxes to the Department of Taxation and Finance by the county treasurers of certain Forest Preserve counties, and the sale of real property by such department and county treasurers;" and of the latter, " An Act to amend the Tax Law to conform to the State Departments Law, in relation to the levy, payment and collection of taxes on real property and sales for unpaid taxes and redemption of lands."

Section 100 of the Tax Law, as amended in the former, was re-enacted verbatim in the latter, which is strictly an act " to conform " in accordance with departmental changes, and did not specifically or by implication repeal the former.

They should be considered together. (Gen. Constr. Law, § 100; *Smith* v. *People*, 47 N. Y. 330, 339; *O'Bryan* v. *State of New York*, 148 App. Div. 542, 544.)

The other alleged irregularities are captious and insufficient to warrant an injunction.

The clerk of the board of supervisors was not required to deliver a statement of the taxes levied against plaintiff's properties. Section 60 (as amd. by Laws of 1923, chap. 656), which contains the only reference to a statement to be filed by the clerk of the board, refers to incorporated companies.

The warrant of the tax collector was returnable on February 1, 1930, although the resolution levying the taxes and authorizing the warrant to be attached to the tax roll was not adopted until December 31, 1929. Section 59 of the Tax Law (as amd. by Laws

of 1926, chap. 286) requires such a resolution on or before December fifteenth in each year, but Ulster county is a Forest Preserve county, where the provision does not apply.

Moreover, the provision is directory and not mandatory. (*Bradley* v. *Ward*, 58 N. Y. 401, 408; *Matter of Long*, 40 App. Div. 152.)

In *Bradley* v. *Ward* (*supra*, at p. 408), where an offer was made to show that the warrant was not delivered until the thirty-first of January, the court said: " The delay does not invalidate the warrant. The statute is directory."

Finally, there is no requirement that the board of supervisors petition the county treasurer to extend the time for the execution of the collector's warrant to April first. (Tax Law, § 85, as amd. by Laws of 1916, chap. 323; County Law, § 150.)

And the answering affidavits show that the applications were made by the respective supervisors, as required, and were granted.

The objections do not reach the validity of the assessments, but relate, solely, to matters which are subsequent.

The complaint is insufficient as matter of law, but no motion to dismiss has been made.

The unpaid taxes in the three towns amount to the sum of $170,000, approximately. To carry on, each town needs the amount which is due and owing to it from plaintiff. The proceedings by certiorari were commenced in September, 1 929. A referee was appointed therein on October 5, 1929, but there had been no hearings before him down to October 1, 1930, when he became disqualified, whereupon plaintiff procured the appointment of another referee, *ex parte*. This procedure is being attacked by defendants on another appeal, now before this court. (*Matter of City of New York* v. *Every*, 231 App. Div. 576.) The proceedings have been marked by dilatory tactics on plaintiff's part. When it became evident that the stay at first obtained would be set aside, plaintiff resorted to the actions, which were brought for the same purpose. The result will be further delay, which will embarrass the towns, undoubtedly.

We think that there is no reason why the towns should be longer delayed. The orders should be reversed, with ten dollars costs and disbursements as one appeal, and the motions should be denied, with ten dollars costs as of one motion.

All concur; DAVIS, J., in the result.

Orders reversed, on the law and the facts, with ten dollars costs and disbursements as to one order; and motions denied, with ten dollars costs as to one motion.