Robert W. Bascom, J.
The action is brought pursuant to article 15 of the Beal Property Actions and Proceedings Law to secure possession of and quiet the title to real property to which defendant claims an adverse interest generated by two recorded tax sale deeds. Plaintiff acquired title by virtue of a deed in August, 1939 from John S. Wood to himself and plaintiff, his wife, recorded in Warren County Clerk’s office May 27, 1940, in Liber 215 of Deeds at page 89, and by virtue of her husband’s subsequent death, to lands in the Town of Caldwell, County of Warren, being lot No. 1 of a subdivision of lands owned by Neva D. Turner, lying easterly of the so-called “ Lake George to Bolton Landing State Boad ”, more particularly bounded and described as follows:
*598 ‘ ‘ beginning at a cross chiseled on a rock at high water mark on the west shore of Lake George, which said point is distant in a northerly direction five hundred ten (510) feet, be the same more or less, measured along the high water mark of said lake, as the same winds and turns, from the point where the northeasterly line of the lands formerly conveyed by the said Neva D. Turner to one McCaw intersects the line of said high water mark; and running thence north sixty-one (61) degrees forty-two (42) minutes west and generally along a line of marked trees for a distance of three hundred eighty-seven (387) feet, be the same more or less, and to an iron pipe driven in the ground for a corner; thence north fifty-nine (59) degrees fifty-one (51) minutes east for a distance of one hundred forty-seven (147) feet, to an iron pipe driven in the ground for a corner; thence running southerly fifty-eight (58) degrees forty-three (43) minutes east for a distance of one hundred twenty and five tenths (120.5) feet to an iron pipe driven in the ground for a corner; thence running south fifty-two (52) degrees forty-eight (48) minutes east and generally along a line of marked trees for a distance of one hundred sixty-four (164) feet, be the same more or less, and to a cross chiseled on a rock at high water mark on said westerly shore of Lake George; thence running in a southerly direction and along the westerly shore of Lake George at high water mark, as the same winds and turns, for a distance of one hundred (100) feet, be the same more or less, and to the place and point of beginning; containing eighty-seven hundredths (0.87) acres of land, be the same more or less ’ ’; together with a certain right of way thereto from said State road.
The name of the Town of Caldwell was changed to Lake George April 24, 1962 by chapter 709 of the Laws of 1962. Plaintiff occupied this property from 1939 to 1967, and owned no other real estate in Warren County.
The evidence discloses that, on both the 1962 and 1963 assessment rolls of that town, the only property assessed to John and Josephine Wood was described as in School District 1, bounded north by Burton, east by Lake George, south by Buck and west by Burton and as “ Shon. Pat. Pt. 16 — E Bolton Ed.— Res. 7/8 A.” Both rolls purported to have been verified by three Assessors. A search of the records of the Town Clerk for the years 1958 to 1963 and of the County Clerk’s records from 1956 to 1963 revealed no oath of office of one of the Assessors, required to be filed by section 25 of the Town Law. Both verifications were' in the form required by former section 28 of the Tax Law, instead of the form provided since 1959 by section 514 of *599 the Real Property Tax Law. (Unless otherwise indicated, all references hereinafter made to sections of the law refer to the Real Property Tax Law.)
Plaintiff’s lands were, in fact bounded on the north by property of the Antlers Hotel Corporation, east by the lake, south by Buck, and who adjoined on the west does not appear. The 1962 roll contains 10 and the 1963 roll 11 parcels assessed to Burton, none of which are bounded by Wood. These rolls also include 10 parcels assessed to Antlers Hotel Corporation, none of which are bounded by Wood, and the only one of which borders on the lake is said to be bounded south by Haskell. In 1958 one Burton conveyed to the Antlers Hotel Corporation some 10 acres lying between the Bolton Road and the westerly shore of Lake George. The identity or location of this parcel, with reference to plaintiff’s land, does not appear except as it may be safely inferred from certain recitals in the deed, and in plaintiff’s deed, that it, in fact, adjoined plaintiff on the north and, thus, that Burton was the abutting owner on plaintiff’s north prior to 1958.
The taxes levied on plaintiff’s property from these two rolls having been returned as unpaid in each year, tax sale proceedings were undertaken. Notice of sale pursuant to section 1002 was duly published each year, warning of sales to be held respectively on December 23, 1963 and October 23, 1964. Proof of publication of the latter notice (§ 1002) was not filed in the County Treasurer’s office, however, until September 26, 1969, when it was discovered that duplicate proofs which had been received in the Treasurer’s office October 21, 1964, had both been inadvertently sent by that office to the County Clerk.
Defendant attended both sales, and at the 1963 sale she was the successful bidder for six eighths of an acre “ of the easterly portion, on the lake ”. At the 1964 sale she was the successful bidder against an opposing bid on behalf of the county, her bid being for “ 6/8 of an acre”. Notice to redeem was duly published. Having paid the amount required within the time limited therefor, but without making written application for them (§ 1018), defendant received two separate tax deeds from the County Treasurer, one dated September 22, 1965 resulting from the 1963 sale, and the other dated September 22, 1967 pursuant to the 1964 sale. Both deeds were admittedly executed and delivered prior to the expiration of the respective redemption periods, but were recorded respectively on September 26, 1967 in Liber 486 of Deeds at page 373, and on November 9, 1967 in Liber 488 of Deeds at page 266, both subsequent to the time allowed for redeeming occupied lands (§ 1022).
*600 The earlier deed purported to convey to defendant the interest and title of the persons to whom the parcel was assessed as owners or occupants of “ 6/8 acre on the lake ” of the parcel of seven eighths of an acre as described as aforesaid on the 1962 rolls. The latter deed purported to convey the like interest and title to “Easterly portion 6/8ths of an acre of” the parcel of seven eighths of an acre as described on the 1963 roll.
Plaintiff attacks the validity of the assessments and, thus, the jurisdiction of the Supervisors to levy a tax, on the grounds of the failure of one Assessor to file his oath, the improper verification of the rolls, and the improper description of the property insofar as Burton is shown as an abutting owper. She also attacks the validity of the 1964 sale because the proof of publication of notice thereof was not timely filed with the County Treasurer, and she attacks the deeds as void and of no effect because of their having been executed and delivered without written application therefor, and prior to the expiration of the redemption period; also because they contain the same improper description found on the assessment rolls, and do not describe identifiable property.
It is elementary that when one claims to hold another’s property under statutory proceedings, as under a sale for taxes, he must show that every material provision designed for the security and protection of the person taxed has been complied with, otherwise the claim will fail (Cruger v. Dougherty, 43 N. Y. 107, 121; McKinney’s Cons. Laws of N. Y., Book 1, Statutes, §§ 174, 176). It is the business of a purchaser at such sales to collect and preserve all the muniments upon which the validity of his title depends. The onus is upon bim to show that the statutorily prescribed proceedings were pursued with precision by the persons invested with the power to wrest away the title of another. Statutes governing the assessment and sale of lands for taxes are liberally construed in favor of the owner (Clark v. Kirkland, 133 App. Div. 826, 833, affd. 202 N. Y. 573). If, however, the proceedings were regular, plaintiff must bear the misfortune.
The defect, if any, caused by the apparent failure of one Assessor, who nevertheless exercised the functions of office, to file his oath, thereby creating a vacancy in the office (Town Law, § 25; Public Officers Law, § 30), and causing this second class town to have one less Assessor than is called for by section 20 of the Town Law, is overcome by section 15 of the Public Officers Law which validates and makes his acts of as much force and effect as if such oath had been taken and filed, not *601 withstanding any law declaring the office to be vacant.- The Assessor in question was a de facto officer holding a defeasible title to the office. Any transgression on his part did not affect the validity of his acts where persons other than himself are interested in maintaining their validity (Penal Law, § 1821, in effect prior to Sept. 1, 1967).
In support of her attack on the form of verification of the rolls, plaintiff relies on Van Rensselaer v. Witbeck (7 N. Y. 517) and Westfall v. Preston (49 N. Y. 349). These cases hold that a substantial compliance with the statute in measures preliminary to the taxation of property in all matters which are of the substance of the procedure and designed for the protection of the taxpayer, are conditions precedent to the legality of the tax and the jurisdiction to impose it. The cited cases, however, are readily distinguishable from this case. In Van Rensselaer, the statute required -a certificate that the Assessors had estimated the value of the real estate at the true value thereof, and the value of the personal property according to our best information and belief. Instead of so doing, they certified they had estimated the value of the realty at sums which they deemed proper and the personal property according to the usual wag of assessing. The court felt this was worse than no certificate at all, and negatived all presumption that they had done their duty. In other words, the property had not been assessed according to law. In Westfall, where there was no attack on the form of the certificate, it was made before the roll was completed, before the plaintiff’s name was added, and before the time for review and hearing and disposing of objections. The court held such certification a nullity and, hence, the supervisors wanted jurisdiction to impose a tax and issue a warrant. Here the statute, section 514, required an oath that ‘ ‘ to the best of our knowledge and belief ’ ’ the assessors had set forth all the real property in their assessing unit and, with the exception of changes ‘ ‘ made by a board of review ’ ’, had estimated it at full value. The oath appended to the rolls in question was that ‘‘ according to our best information ’ ’ the assessors had set forth all such property and, with the exception of those cases in which the value had been changed ‘ ‘ by reason of proof produced before us ”, had similarly estimated it. Any substantial difference between the best of one’s knowledge and belief and his best information, escapes me. A “ Board of Review ” means the assessors unless another officer or body is empowered to hear and determine complaints in-relation to assessments (§ 102, subd. 4). There was no proof here of the existence of any such other officer or body in this *602 taxing unit. Hence, I again discern no difference between changes made by a board of review and changes made by the assessors where they are such board of review. It is not necessary that the affidavits attached to the roll should comply literally with the statute. The rigorous requirements of the rule are not that rigid. A substantial compliance is sufficient (Buffalo and State Line R. R. Co. v. Board of Supervisors of Erie County, 48 N. Y. 93; National Bank of Chemung v. City of Elmira, 6 Lans. 116). The affidavits here in question are found to be in substantial compliance, even if it be assumed they are here subject to collateral attack, which I doubt (Sorchan v. City of Brooklyn, 3 Hun 562).
The rolls also withstand the final attack thereon by way of inadequate description. The statute, section 502, requires a description sufficient to identify the property assessed, including the surnames of the abutting owners. True it is, an error was made in identifying one of such owners. The same statute, however, provides that such error shall not prevent the levy, collection and enforcement of the taxes if the parcel can be identified and located with reasonable certainty (§ 504). The salutary purposes of the statute in requiring accurate descriptions are to afford the purchaser at the tax sale an opportunity to find and locate the land after his purchase, and that the owner may have information of the claim made upon him or his property, and may know it is his land which is advertised for sale or redemption, thns affording him the opportunity to prevent the sale by paying the tax. Mistake or falsity of description permeates the whole proceeding (Tallman v. White, 2 N. Y. 66, 71). Here the purchaser obviously found and located the land, as evidenced by the fact that she is in possession and has paid the taxes thereon since the 1964 sale. The owner also had no misconception and was under no deception as to the identity of the property. Her testimony was that for several years prior to those in question she had received and paid tax bills for this, the only property she owned in the county, containing the same erroneous description as to one abutting owner, and there was never any question in her mind that they applied to and described the same land here in suit (McDonogh v. Smith, 277 App. Div. 1087). The descriptions used were sufficiently accurate for the interested parties to identify the land assessed, and locate it with reasonable certainty. That is the standard to be applied (McCoun v. Pierpont, 232 N. Y. 66, 69; Blum v. Nassau Purchasing & Bldg. Corp., 256 N. Y. 232).
In support of her contention that the 1964 sale was invalid because of the misfiling of the proof of publication of the notice *603 thereof in the County Clerk’s office, plaintiff relies on Clason v. Baldwin (152 N. Y. 204) holding that in purely statutory proceedings the title of an owner cannot be divested without strict compliance with the statutory provisions, and that every requisite of the statute, having the semblance of benefit to the owner, must be substantially, if not strictly, complied with. Absent the giving of the notice, undoubtedly the County Treasurer would have no jurisdiction to sell. The place where the proof thereof reposed, however, was of no great moment or benefit to plaintiff and not of the essence of the sale. Some regulations of the statute are intended to promote method, system and uniformity in the modes of proceeding, the compliance or noncompliance with which in no respect affect the rights of the taxpayer. Such regulations are directory rather than mandatory (Torrey v. Millbury, 21 Pick. [Mass.] 64, 67; see, also, People ex rel. Lefever v. Supervisors of Ulster, 34 N. Y. 268). I regard so much of the provisions of section 1002 as refers to the time and place of filing these proofs as directory and not as a condition precedent to the legality and validity of the sale. The misfiling in no way prejudiced plaintiff, and was an administrative error which could be and was rectified. In any event, such misplacing of the 1964 proofs in no way affected the validity of the 1963 sale.
We come now to the attacks on the tax deeds themselves. The initial complaint is that they were executed and delivered prior to the expiration of the redemption period. This does not make them void. Section 1018 provides that if property sold for taxes is not redeemed within the time limited by section 1010, the County Treasurer shall execute a conveyance. The last-mentioned section limits this time to one year from the sale. Neither deed was executed within that period. True it is that section 1022 provides an additional period for redemption of occupied lands, but it contains no proscription against the execution and delivery of a conveyance prior to the expiration of the extended period. In fact, the section contemplates such delivery of the deed by providing that a purchaser ‘ ‘ receiving a conveyance from the county treasurer pursuant to section ten hundred eighteen ’ ’ may take certain steps to reduce the redemption period otherwise allowed. It further enjoins the recording, not the delivery, of such conveyance until the expiration of the period. Neither deed here involved was so recorded, and the lands were never redeemed.
The next assault is by reason of the fact the purchaser did not make written application for her deeds. Here again plaintiff places mistaken reliance on Matter of Blatnicky v. Ciancimino *604 (206 Misc. 916, holding that such written application is a condition precedent to the right to receive the deeds; affd. on other ground 1 A D 2d 383, mot. for lv. to app. den. 2 A D 2d 679, affd. 2 N Y 2d 943). That case is readily distinguishable. It was an article 78 proceeding between a tax sale purchaser, who had failed to make the required application, and a County Treasurer, seeking an order to issue a deed. The prior owner was not involved. Furthermore, the Tax Law in effect at that time provided that if application were not made in writing, no claim could be maintained under the purchase. No comparable provision appears in the present law. The provision for written application is for the benefit and protection of the County Treasurer and the intramural operation of his office. It provides him with certain needed information such as the spelling of the purchaser’s name, his address, the date on which the application is made in relation to the time when the certificate of sale lapses and the owner of the fee benefits. The Treasurer may refuse to deliver a deed to a purchaser without the proper application, but if he elects to waive it, that is his privilege. The fee owner is in no way prejudiced and due process is done no violence. As between the owner and the purchaser, the absence of such application does not vitiate the deed, and the owner may not collaterally attack such absence.
The final attack is on the descriptions in the tax deeds, the first of which purports to convey “ 6/8 acre on the lake of ” that parcel of land assessed on the 1962 roll to plaintiff and her husband, bounded and described on such roll as 11 in lot 16, Shonnard Patent, residence, bounded north & west by Burton, east by Lake George, south by Buck, 7/8 acre ’ ’, and the second of which attempted to convey 1 ‘ Easterly portion 6/8ths of an acre of ’ ’ the parcel similarly assessed on the 1963 roll, and thereon similarly described. It is urged that these descriptions do not represent the same parcel, are unidentifiable, and are of unknown dimensions and boundaries. With this contention, I concur. Ooncededly, a straight division line drawn from the northerly to the southerly lines of the lot parallel to the west line, at an appropriate distance therefrom, would answer this description. Equally so would a similar line drawn parallel to the winds and turns of the lake shore. So, too, would a diversity of variously located straight, irregular, curved or elliptical lines satisfy this vague description, and all of which would leave the part of the lot not sold in as many different shapes and dimensions as the imagination can conceive. Where do the parties put down their corner stakes or erect a line fence Í How could the assessors in years subsequent to the sale describe either the purchaser’s or *605 the owner’s portion of the lot? The deeds convey nothing identifiable and are void for uncertainty (Zink v. McManus, 121 N. Y. 259).
Above and beyond this, it is obvious that the County Treasurer attempted an unwarranted division of the property. Defendant testified she 1 ‘ bid 6/8 of the easterly portion, on the lake * * * 6/8 of an acre on the easterly portion ” and “ I would take 6/8 of an acre on the lake as I bid. ’ ’ This, coupled with the wording of the deeds, clearly reveals that both the buyer and seller at the tax sales contemplated a purchase of a designated segment of the property embracing all the lake front, and relegating the owner to the rear, and perhaps inaccessible portion of the lot. That is to say, a partition was attempted. Counsel for both parties, in their briefs, appear to acquiesce therein and accept that fact.
The governing statute (§ 1006) requires the Treasurer to sell “ so much ” of each parcel as may be sufficient to pay the amount due thereon. I construe the quoted words to refer to quantity or percentage, not to quality, location, or admeasurement. No reason for a different interpretation suggests itself, and cogent reasons militate against a different construction. In any given case, when a partition without the participation of the owner occurs, lines could be drawn through buildings or other improvements; wharfs, docks, dams, piers, streams, lake frontage, tillable land, crops, easements, or other benefits could be set off to the buyer, and the worthless and perhaps inaccessible portion of the land improvidently consigned to the former owner. Such was not the intent of the law. A County Treasurer’s power to sell, being a naked power not coupled with any estate or interest of his own, is to be strictly construed and exercised in conformity with the statute creating it. At tax sales the amount of the lien is the maximum that can be bid, and where competitive bidding is involved, bids can be accepted for portions or percentages of the parcel until so much be sold as will satisfy the lien (17 Op. St. Comp., 1961, p. 58). In short, where the County Treasurer sells less than the whole parcel, he can only sell fractional undivided interests in the whole. He cannot cut the pie into pieces and serve a particular portion on a plate to the purchaser. He can only invite the purchaser to sit down at the same table and enjoy the feast in common with the fee owner. The purchaser and the former owner become tenants in common of the whole parcel. If involuntary partition later be necessary, that is the province of the courts. No power to partition is confided to a County Treasurer. Here, then, when defendant bid six eighths of an acre, the parcel containing seven eighths of an acre, the Treasurer should *606 have conveyed an undivided six-sevenths interest in the whole. He was without jurisdiction to sell or convey a designated segment of the land, and the deeds for this reason, if for none other, are wholly ineffectual and void.
Judgment must accordingly be for the plaintiff.
The motion made by defendant at the inception of the trial, under CPLR 1001 and 1003, to dismiss the complaint for nonjoinder of the county and town, upon which decision was reserved, is denied, with appropriate exception to the defendant (Real Property Actions and Proceedings Law, § 1511). Neither municipality has any interest herein nor will be affected by the judgment herein.