OPINION OF THE COURT
Thomas E. Mercure, J.
This is a CPLR article 78 proceeding brought on by petitioner Culspar, Inc., a domestic corporation, against the Essex County Treasurer and its board of supervisors, as respondents.
Petitioner challenges the manner in which respondent, County Treasurer of Essex County, conducted a 1979 tax sale of the real property owned by petitioner.
Culspar, Inc., owns and operates the premises commonly referred to as the Holiday Harbor Complex in Lake Placid, New York, consisting of multiple structures and operations, including a restaurant, theatre, discotheque, marina, tour boat operation and miscellaneous related buildings and functions. The real property comprising this complex contains approximately four acres of land and consists of the following tax parcels, as recorded by the Essex County Treasurer’s office: 675J116105; 675J116208; 675J112514; 675J112513; 675J112512; 675J112511; 672A105011 and 672A105012.
*5 The following relief is sought by petitioner:
(a) Prohibiting respondents from conveying by deed or otherwise the property belonging to Culspar, Inc., to the County of Essex;
(b) Determining that the 1979 tax sale is null and void with respect to the parcels that were not included in either the notice of tax sale or the notice of redemption;
(c) Determining that the 1979 tax sale is null and void with respect to the other six parcels due to the failure of the Essex County Treasurer to comply with the procedures of the Real Property Tax Law, including issuance of a tax sale certificate;
(d) Alternatively, prohibiting respondents from interfering with such right of redemption by petitioner as the court may find, after trial, is appropriate and as specified under section 1010 of the Real Property Tax Law.
It is the contention of the petitioner that its properties, bid in by the county treasurer on behalf of the County of Essex in the 1979 tax sale, were improperly sold due to the failure of the county treasurer to issue tax sale certificates to the county for the year 1979.
Respondents, in opposition, state that the failure of the county treasurer to issue tax sale certificates to the county was a ministerial act and not a fatal defect to the validity of the tax sale.
Because the owner of the property is being divested of his title, the Legislature enacted certain statutory requirements for the taxpayer’s benefit and protection. These statutes are to be strictly construed and any doubt is to be resolved in favor of the taxpayer and against the taxing authority. (Walsh v Blair, 89 Misc 2d 989; Long Is. R.R. Co. v City of New York, 64 NYS2d 391.)
Article 10 of the Real Property Tax Law governs the sale, redemption and disposition of property sold for delinquent taxes. It is in the interpretation of the various sections of article 10 as applicable here that must determine the validity of the tax sale.
There appears to be no factual dispute between the parties that tax sale certificates were not issued to Essex County for the 1979 tax sale. (Real Property Tax Law, *6 § 1006, subd 2.) Disagreement as between the parties lies in the significance of this failure; petitioner taking the position that a tax sale certificate is not only required, regardless of purchaser, but is absolutely essential in view of the redemption rights created by section 1010 of the Real Property Tax Law, with its specific reference to the tax sale certificate.
Respondents argue that the certificate is not required when a county is the purchaser of the certificate at the sale.
The county treasurer acts in a dual capacity when acquiring property due to tax sales. He is acting in an administrative capacity when carrying out his governmental function in conducting the tax sale and, when he acquires property belonging to others, he is acting in a proprietary capacity. (Devine v County of Suffolk, 71 Misc 2d 883.) “There is no question but that the county acted in a proprietary capacity and its rights are no different from those of an individual in its power to acquire and hold lands sold at tax sale.” (Supra, p 886.)
County of Herkimer v Village of Herkimer (251 App Div 126), wherein the county, in dealing with property that the county bid in at a tax sale, relates the dual capacity principle: “A municipal corporation possesses two kinds of power: (1) Governmental and public; (2) proprietary and private. In the exercise of the former the corporation is a municipal government, while as to the latter it is a corporate legal individual” (p 128). “It may well be that the interest of the public will be promoted by the plaintiff’s bidding in this property and holding it until it can be sold to advantage, and thus realizing an amount sufficient to pay the county taxes assessed against the property” (p 130). “The property in question does not come within the above definition of ‘public use.’ The mere fact that it was bid in on a tax sale, and is held in trust for the public in the hope of eventually getting enough from its sale or use to pajr the unpaid taxes, does not give the owner immunity from sharing in the expense of the village government” (p 129).
The county is (above) defined as a “corporate legal individual”. Since title 1 of the Real Property Tax Law govern *7 ing tax sales has the effect of divesting an owner of his property, technical requirements of the law must strictly be adhered to. (De Stefano v Kaufman, 66 Misc 2d 302; Walsh v Blair, supra; Long Is. R. R. Co. v City of New York, supra.)
Strict adherence to technical requirements is for the benefit of the owner and the tax sale purchaser must fully protect the rights of the owner. (Wood v La Rose, 67 Misc 2d 597.) The purchaser’s obligation is clearly set out in Wood (supra, p 600): “It is elementary that when one claims to hold another’s property under statutory proceedings, as under a sale for taxes, he must show that every material provision designed for the security and protection of the person taxed has been complied with, otherwise the claim will fail (Cruger v. Dougherty, 43 N. Y. 107,121 * * * It is the business of a purchaser at such sales to collect and preserve all the muniments upon which the validity of his title depends. The onus is upon him to show that the statutorily prescribed proceedings were pursued with precision by the persons invested with the power to wrest away the title of another. Statutes governing the assessment and sale of lands for taxes are liberally construed in favor of the owner (Clark v. Kirkland, 133 App. Div. 826, 833, affd. 202 N. Y. 573).”
In the opinion of this court, the purchaser’s obligation to “preserve the muniments upon which the validity of title depends”, is as applicable to the county as to an individual purchaser. (Real Property Tax Law, § 1006, subd 2.) Therefore, a tax sale certificate issued in compliance with section 1006 of the Real Property Tax Law is as necessary to the county as evidence of its inchoate right in the property as it would be to an individual purchaser. Without a tax sale certificate, there cannot be a valid tax sale relative to the properties here at issue.
It should be observed that there is no provision or indication in either section 1006 or 1010 of the Real Property Tax Law that a tax sale certificate is either not needed or not relevant where the county is the purchaser at the tax sale. If the Legislature had intended to eliminate the requirement of a tax sale certificate in this situation, it could simply and clearly have done so.
*8 Since the owner’s redemption rights are carefully spelled out by the interplay of section 1010 with section 1006, the requirement and relevance of the tax sale certificate when the county is the purchaser is self-evident. Regardless of whether the county or a private party purchases property at the tax sale, subdivision 2 of section 1006 requires that a tax sale certificate be issued, and this certificate becomes the critical source of the owner’s right of redemption.
The county treasurer argues that the statutory mandate of subdivision 2 of section 1006, that he “shall” issue a written tax sale certificate, is merely permissive or directory and not mandatory in nature. However, both Black’s Law Dictionary (5th ed, 1979, at p 1233) and Webster’s Dictionary clearly state that the word “shall” is mandatory. Black’s, in particular, states that when the word “shall” is used in statutes, it “must be given a compulsory meaning; as denoting obligation.” While Black’s also states that the word “shall” may be construed as permissive “in cases where no right or benefit to anyone depends on its being taken in the imperative sense,” this is clearly not the case here since the owner’s substantive and procedural rights of redemption are premised on and defined by the issuance and contents of the tax sale certificate.
Petitioner further contends that it and its attorney were informed by the Essex County Treasurer that, if redemption was to be affected, all the taxes, including interest, expenses and other charges for the years 1979, 1980 and 1981 must be paid at the time of redemption on the 1979 tax sale. (Oct. 31, 1982.)
Petitioner argues that subdivision 1 of section 1010 of the Real Property Tax Law allows a taxpayer to redeem his property by paying to the county treasurer, “the sum mentioned in the certificate of sale with interest thereon at a rate of ten per centum per annum computed from the date of such certificate.”
Petitioner’s argument in the above regard is erroneous in that subdivision 1 of section 1010 further states, in pertinent part: “The owner, occupant or any other person may redeem any real property sold for taxes at any time within one year from the last day of sale by paying to the *9 county treasurer * * * (b) such amounts as may have been paid by the purchaser to redeem such property from prior or subsequent tax sales with interest thereon at the rate of six per centum per annum from the date of payment.”
The county, in the instant case, purchased petitioner’s property at tax sale for the years 1979,1980 and 1981. Had the tax sales been without defect herein (supra), the owner would have been obligated to pay in sum total, the amounts stated in the tax sale certificates for the three years. (See Opns St Comp, 1980, Opn No. 80-567; 1970, Opn No. 70-813.) Were the situation otherwise and the owner only required to pay the oldest tax certificate, an anomalous situation would present itself, in that the taxpayer could remain three years perpetually in arrears. This violation of the spirit and intent of the statute could not have been meant by the Legislature.
Petitioner further contends that only six of the eight parcels owned by it were considered in the 1979 tax sale. This is denied by respondents. This court is unable to make a determination in this regard due to the inadequacy of evidentiary matter herein submitted. However, the matter is moot since the 1979 tax sale has been determined null and void due to the failure of the Essex County Treasurer to issue a tax sale certificate for the 1979 tax sale of petitioner’s property.