In the Matter of ELINOR HOMES COMPANY et al., Respondents-Appellants, v JOSEPH T. ST. LAWRENCE, Respondent, and COUNTY OF ROCKLAND, Appellant-Respondent.

Second Department, November 4, 1985

### APPEARANCES OF COUNSEL

*Ilan S. Schoenberger, County Attorney* (*Murray N. Jacobson* of counsel), for appellant-respondent.

*Granik, Silverman, Sandberg, Campbell & Nowicki* (*David W. Silverman* and *Carolyn A. Campe* of counsel), for respondents-appellants.

### OPINION OF THE COURT

RUBIN, J.

The primary issue on this appeal is whether the Treasurer of the County of Rockland is mandated by the Real Property Tax Law to accept the title owners' tender of payment of a tax sale certificate acquired by the County of Rockland at a tax sale for unpaid 1979 real property taxes (including relevied 1978 school taxes) levied against his land when no simultaneous tender of payment was made for two additional outstanding tax sale certificates acquired by the county at subsequent, successive tax sales for unpaid 1980 and 1981 taxes levied against the same parcel.

Petitioners are property owners who have been delinquent in the payment of real property taxes for three successive years. The intervenor, the County of Rockland (county), enforces the collection of unpaid taxes by administrative tax sale pursuant to Real Property Tax Law article 10. At such a tax sale, the County Treasurer must sell so much of each parcel as will be sufficient to pay the amount due on said parcel as specified in the notice of sale (*see,* Real Property Tax Law § 1006 [1]), which includes the unpaid taxes for the year advertised, the 5% added pursuant to Real Property Tax Law § 936, interest thereon, and the expense chargeable against the parcel (*see,* Real Property Tax Law § 1002 [2]). At each sale, the County Treasurer furnishes the purchaser with a tax sale certificate, describing the parcel purchased, the amount paid thereon, and the time when the purchaser will be entitled to a deed. In the event the lands described in the certificate are not redeemed, the purchaser may take a conveyance

of the lands as provided in Real Property Tax Law, article 10, title 1, or foreclose his lien pursuant to article 11, title 2 (*see,* Real Property Tax Law § 1006 [2]). Pursuant to Real Property Tax Law § 1008 (3) the board of supervisors of a county\* may by resolution authorize and direct the County Treasurer to purchase lands at the tax sale, without competitive bidding, for the gross amount due thereon. The purpose behind such authorization, which excludes third-party bidders, is to allow counties to prevent abuses resulting from competitive bidding by unscrupulous tax sale speculators (33 Opns St Comp, 1977, p 154). Rockland County has apparently opted to conduct tax sales without competitive bidding and the Treasurer purchases for the county all property sold at a tax sale for unpaid taxes.

At a tax sale conducted in October 1979, properties owned by petitioners were sold by the County Treasurer to the County of Rockland for delinquent State, county and town taxes levied for the year 1979 and the relevied 1978 school taxes. For each parcel sold, the county was furnished with a tax sale certificate. Thereafter, the county acquired tax sale certificates for the same parcels when said parcels were again sold for unpaid real property taxes at the tax sales held for the years 1980 and 1981.

In 1982, petitioner Elinor Homes Company (Elinor Homes) tendered payment of the oldest of the three tax sale certificates acquired by the county for the purpose of redemption. The County Treasurer refused the tender, advising Elinor Homes that, in order to redeem its property, all three tax sale certificates for said parcel must be paid in full. Based on the Treasurer's refusal to accept Elinor Homes' tender, the other petitioners did not tender payment of the 1979 tax sale certificates on their respective parcels.

Thereafter, petitioners commenced this CPLR article 78 proceeding against the County Treasurer to compel said official to accept payment for the 1979 tax sale certificates acquired by the county, contending that there is no provision in the Real Property Tax Law which requires the owner to simultaneously pay all outstanding tax sale certificates on a specific parcel before exercising the right of redemption. By judgment dated April 1, 1982, Special Term granted the petition to the extent, *inter alia,* of directing the Treasurer to

---

\* Whenever any statute refers to a "board of supervisors" of a county, it is deemed to apply also to a County Legislature (County Law § 150-a).

accept petitioners' payments for redemption of the certificates acquired by the county at the 1979 tax sale and afforded petitioners 20 days from the date of service of said judgment with notice of entry to make their payments.

Subsequently, the County of Rockland moved for leave to intervene in the proceeding for the purpose of perfecting an appeal. The motion was granted by order dated August 16, 1983. Special Term cited the county's interest in the outcome of the proceeding and the County Treasurer's refusal to take an appeal as the factors warranting intervention.

Addressing this procedural issue first, petitioners contend on their cross appeal from the order dated August 16, 1983, that Special Term abused its discretion in granting the county's motion to intervene because the application was not timely and the supporting papers failed to show, in accordance with the requirements of CPLR 1012, that the county's interests are inadequately represented by the County Treasurer and that the county may be bound by the judgment.

■ Petitioners' reliance on the requirements for granting intervention in an action pursuant to CPLR 1012 is misplaced. CPLR 7802 (d) is the specific provision governing intervention in CPLR article 78 proceedings. CPLR 7802 (d) states that a court "may allow other interested persons to intervene". This subdivision grants the court broader power to allow intervention in an article 78 proceeding than is provided pursuant to either CPLR 1012 or 1013 in an action (see, Second Preliminary Report of the Advisory Committee on Practice and Procedure [NY Legis Doc, 1958, No. 13], at 398; *Matter of Helms v Diamond,* 76 Misc 2d 253, 255; *Matter of Muccioli v Board of Stds. & Appeals,* 42 Misc 2d 1088, 1089). The court has discretion to allow intervention in a CPLR article 78 proceeding at any time, provided the movant is an interested person (see, Siegel, NY Prac § 564 [1978]). Here, the county was the owner of the tax sale certificates in question and the owner of the funds in the custody of the County Treasurer (see, County Law § 550 [2]). Under the circumstances, the county was clearly an interested person. Moreover, the county's motion to intervene was made before the respondent Treasurer's time to appeal expired. It appears that petitioners delayed in serving upon the respondent Treasurer the judgment dated April 1, 1982 with notice of entry, which would have started the clock running on the time to file a notice of appeal, because serving the Treasurer also would have started the clock running on the time afforded by said judgment to

tender payment to the County Treasurer. Consequently, petitioners cannot be heard to complain that the motion was untimely. The interest of the county having been established, the motion to intervene was properly granted.

■ Turning to the substantive issue, we conclude that petitioners do not have a statutory right to redeem their respective lands from the 1979 tax sales unless payment for the certificates issued at said sales to the county together with payment for all outstanding certificates acquired by the county at subsequent, successive tax sales, plus interest and penalties allowed by law, is tendered to the County Treasurer (*see, Culspar, Inc. v County of Essex,* 119 Misc 2d 4, 9; 1980 Opns St Comp No. 80-567, p 160; 1970 Opns St Comp No. 70-813, unreported).

The right to redeem land sold to enforce the collection of taxes assessed against it exists only as permitted by statute and under such conditions as are expressed therein (*Matter of Blatnicky v Ciancimino,* 206 Misc 916, 919, *affd* 1 AD2d 383, *affd* 2 NY2d 943; *Matter of Saman Holding Corp. v Burns,* 2 AD2d 994; *Hennepin Improvement Co. v Schuster,* 66 Misc 634, *affd* 151 App Div 903). Real Property Tax Law § 1010 provides for a one-year period for redeeming unoccupied lands and Real Property Tax Law § 1022 provides for a three-year period for redeeming occupied lands. According to petitioners' attorney, the County Treasurer had advised counsel that all properties in the County of Rockland have been, and would continue to be, afforded the three-year period of redemption and the Treasurer had made similar statements to the local news media. Neither the Treasurer nor the county has ever disputed these allegations. Under these circumstances, section 1022 is the provision applicable to the instant appeal (*cf. Van Wormer v Giovatto,* 46 NY2d 751). Nevertheless, both statutory provisions would require the petitioners to tender payment of all outstanding certificates of sale held by the county in order to redeem their properties.

Real Property Tax Law § 1010 (1) provides, in pertinent part, that: "[t]he owner * * * may redeem any real property sold for taxes at any time within one year from the last day of sale by paying to the county treasurer * * * the sum mentioned in the certificate of sale with interest thereon * * * In addition there shall be paid (a) the amount of *any tax* * * * including penalties and interest thereon * * * on such real property which the *purchaser has paid* after the sale and prior to the date of redemption with interest thereon * * *

provided the county treasurer has been notified immediately upon such payment and (b) *such amounts* as may have been *paid by the purchaser to redeem such property* from prior or *subsequent tax sales* with interest thereon" (emphasis supplied).

Real Property Tax Law § 1022 (1) (a) provides that: "[i]f any parcel of real property sold for taxes * * * is, at the time of the expiration of one year given for the redemption thereof, in the actual occupancy of any person, the occupant or any other person may * * * at any time within thirty-six months after the sale, and not thereafter, redeem the real property so occupied, by filing with the county treasurer satisfactory evidence of such occupancy and by paying to him the amounts specified for redemption in subdivision five of this section".

Subdivision (5) provides that "[t]he occupant or any other person may * * * redeem such land by paying to the county treasurer (a) the amount stated in the certificate of sale * * * (b) *any tax* * * * with interest, penalties and other charges allowed by law * * * on such real property which the *tax sale purchaser* * * * *has paid* between the days of sale and redemption, with interest thereon * * * such *sums* as may have been *paid by such purchaser* * * * *for redemption of such land from* prior or *subsequent tax sales* thereof * * * and the statutory fees paid for the deed" (emphasis supplied).

In setting forth the amount necessary to redeem the property from a particular tax sale, both Real Property Tax Law § 1010 (1) and § 1022 (5) contemplate a situation where the owner of record of the parcel sold at a tax sale fails to pay the real property taxes levied against said parcel for the next year. The purchaser, in order to protect his interest, has three options available. The purchaser may pay the taxes, upon notice to the Treasurer, he may purchase at a subsequent tax sale or, in the event another purchases at a subsequent tax sale, he may redeem the property from the subsequent tax sale. This cycle may again be repeated in subsequent, successive years. Moreover, the purchaser may have had to redeem the property from a tax sale conducted prior to the one at which he purchased the property. In a case where the purchaser at the tax sale from which the owner seeks to redeem his property has also purchased at subsequent tax sales to protect his interest, the purchaser has, in practice, paid the taxes levied against the parcel plus the interest, penalties and other charges allowed by law (*see,* Real Property Tax Law

§ 1002 [2]; § 1006 [1]). Such a purchaser falls within the scope of Real Property Tax Law § 1022 (5) (b) and § 1010 (1) (a). Consequently, if a person, such as the original owner, seeks to redeem a parcel of property from a specific tax sale within the applicable redemption period in order to protect his interest in the parcel, the redeemer must pay the County Treasurer all amounts paid by the purchaser, plus interest, and not merely the amount specified on the certificate issued at said tax sale. In other words, the person seeking to redeem his property from a tax sale must tender payment to the Treasurer for all certificates of sale held by the purchaser for the parcel in question, plus interest, provided said certificates are not void (see, Real Property Tax Law § 1018 [3]).

Special Term was of the opinion that a tax sale purchaser described in Real Property Tax Law § 1010 (1), or § 1022 (5) (b) does not include the county because the county, unlike an individual purchaser, does not advance actual sums for any additional taxes after the sale but merely makes appropriate bookkeeping entries for additional certificates. Since there is consideration given for the certificates of sale acquired by the County of Rockland (see, e.g., Real Property Tax Law § 936 [1]; § 904 [2]; § 1330 [4]; 32 Opns St Comp, 1976, p 20; 31 Opns St Comp, 1975, p 54), we disagree with Special Term's conclusion that, based on the manner in which the transaction is completed, the county should be treated differently than an individual who is the purchaser at a tax sale.

The county acts in a proprietary capacity when it is the purchaser at a tax sale and its rights are no different than those of an individual in its power to acquire and hold lands sold at a tax sale (Real Property Tax Law § 1008 [1]; *Culspar, Inc. v County of Essex,* 119 Misc 2d 4, *supra; County of Herkimer v Village of Herkimer,* 251 App Div 126, *affd* 279 NY 560; *Devine v County of Suffolk,* 71 Misc 2d 883, 886; 58 NY Jur, Taxation, § 421). Real Property Tax Law § 1008 envisions uniformity in redemption. Subdivision (1) of that section expressly provides that "[p]urchases by the county shall be subject to the same right of redemption as purchases by individuals. If a parcel sold to the county is not redeemed, the deed therefor shall have the same effect and become absolute in the same time and upon the same conditions as in the case of a conveyance to an individual." This provision evidences an intent by the Legislature to treat the county in the same manner as private individuals with regard to a redemption of lands from a tax sale. Thus, to distinguish the

county from an individual purchaser is contrary to the legislative intent as expressed in Real Property Tax Law § 1008 (1).

The purpose of the tax sale procedures contained in Real Property Tax Law article 10 is the recoupment of unpaid taxes and the restoration of the property to a tax-producing status for the benefit of the county taxpayers (*see,* 23 Opns St Comp, 1967, p 255; 1982 Opns St Comp No. 82-297, p 380). When the county takes a tax deed upon the expiration of the applicable redemption period and sells the property, it is able to recoup as much as possible of the unpaid taxes, interest and penalties assessed against the parcel and, at the same time, it returns the property to the rolls in a tax-producing status (24 Opns St Comp, 1968, p 958). The purpose of tax enforcement necessitates an expeditious conveyance of the parcel to the county upon the expiration of the applicable redemption period (1982 Opns St Comp No. 82-297, p 380). If the delinquent taxpayer was only required to pay the oldest tax sale certificate held by the county, the taxpayer could remain perpetually three years in arrears. The county would be precluded from ever taking a tax deed to the parcel. This violation of the spirit and intent of the statute's tax sale procedure could not have been meant by the Legislature (*see, Culspar, Inc. v County of Essex,* 119 Misc 2d 4, 9, *supra;* 1980 Opns St Comp No. 80-567, p 160).

It bears repeating that the whole purpose of the tax sale procedures is to expedite the collection of delinquent taxes which will lighten the burden of the remaining taxpayers. Tax delinquencies adversely burden property owners who timely pay their taxes because each county must include a reserve for uncollected taxes in their budgets and levy taxes therefor in anticipation of such delinquencies (*see,* County Law § 355 [1] [e], [f]). Consequently, every property owner who pays taxes includes in said payment a portion to make up for delinquent taxes that will not be received (1980 Opns St Comp No. 80-567, p 160; 1970 Opns St Comp No. 70-813, unreported). To permit delinquent taxpayers to stay perpetually in arrears by requiring only the payment of the oldest tax sale certificates increases the burden of the remaining taxpayers, in contradiction to one of the goals of tax enforcement.

In contrast, the purpose of the tax sale procedures are fulfilled by requiring the delinquent taxpayer to redeem his property from a tax sale by paying all outstanding certificates of sale held by the county, upon the expiration of the applicable redemption period for the oldest certificate. If the delin-

quent taxpayer tenders the required payments, the collection of the taxes, penalties and interest assessed against the property is expedited and the burden on the remaining taxpayers is lessened. If the delinquent taxpayer fails to make the requisite payments, the county can take a conveyance, upon the expiration of the applicable redemption period for the oldest certificate. The parcel may then be marketed as expeditiously as possible, thus achieving the twofold goal of acquiring the proceeds to recoup the unpaid taxes and getting the property back on the taxable rolls to lighten the burden of the remaining taxpayers.

A review of the other options available to the county when it is the purchaser at a tax sale buttresses the statutory construction by this court. Pursuant to Real Property Tax Law § 1016 (1), the county has the option, after purchasing property at a tax sale, of removing the parcel from the taxable portion of the tax rolls rather than making repeated purchases at subsequent tax sales should further delinquencies occur (Real Property Tax Law § 1008 [2]). To redeem a parcel sold at a tax sale to the county and removed from the tax rolls, the delinquent taxpayer must pay to the County Treasurer "a sum equal to the gross amount of the taxes, expenses of sale, penalties and interest thereon, together with the *tax and interest thereon which would have been due had such parcels been taxed during each of the years it was excluded from the taxable portion of the tax rolls*" (Real Property Tax Law § 1016 [2]; emphasis supplied). Thus, the delinquent taxpayer cannot merely redeem a parcel removed from the tax rolls by paying the sum necessary to satisfy the amount set forth in the tax sale certificate but must also pay taxes that would have been levied against the property and not paid by the taxpayer for subsequent years, plus interest. Since the delinquent taxpayer is required to pay taxes which would have been levied where a county has excluded a parcel from the tax rolls, an anomaly would occur if, under Special Term's construction of sections 1010 and 1022, the delinquent taxpayer is required to tender payment for only one certificate when the county has selected the option of purchasing the parcels at successive tax sales. Such an anomaly could not have been intended, particularly since Real Property Tax Law § 1008 envisions uniformity in redemption.

Real Property Tax Law § 1006 (2) provides that if the lands described in the tax sale certificate are not redeemed, the purchaser has the option of foreclosing his lien pursuant to

Real Property Tax Law, article 11, title 2, rather than taking a conveyance as provided in article 10 of said statute. Real Property Tax Law § 1114 similarly provides that "[t]he owner of a tax lien, if the same is not redeemed within the period prescribed by law, may at his option either complete the purchase and take a conveyance of the real property * * * or foreclose his tax lien pursuant to the provisions of this title". Where the county, as the owner of a tax lien evidenced by a certificate of sale, opts to foreclose its lien, Real Property Tax Law, article 11, title 2, also requires full payment by the delinquent taxpayer of all tax liens and other legal charges of the tax district *subsequent* in time to the tax sale, including interest and penalties, in order to redeem the land (Real Property Tax Law § 1110 [2]; § 1112 [1]; *cf. Matter of City of Amsterdam,* 49 Misc 2d 125).

Thus, under the alternatives set forth in Real Property Tax Law § 1016 and article 11, title 2, for collecting delinquent taxes when the county is the purchaser at a tax sale, the delinquent taxpayer may not redeem his property from a specific tax sale unless, prior to the expiration of the redemption period applicable to said sale, he also pays to the county unpaid taxes due to the county for years after the subject sale, plus other penalties, interest and charges allowed by law.

The plain language of Real Property Tax Law §§ 1010 and 1022 speaks in terms of the "redemption" of real property sold for taxes and not the redemption of tax sale certificates. It is clear that the redemption of land is not accomplished by tendering payment for the redemption of one tax sale certificate when three tax sale certificates are held by the county. As long as the county continues to hold outstanding tax sale certificates, the subject land is not redeemed.

Real Property Tax Law, article 10, §§ 1010, 1022 and article 11, § 1110 are *general* provisions applicable to all counties. An exception to these general provisions exists in Real Property Tax Law article 15, which outlines "Special Provisions Relating to Certain Assessing Units". Real Property Tax Law § 1500 (2) (as amended by L 1978, ch 667, § 1), provides that "[n]otwithstanding the provisions of any general or special law to the contrary, the board of supervisors of [Ulster, Clinton, Orange, Orleans, Rensselaer, Columbia or Schoharie] county may by resolution authorize the county treasurer * * * to accept from any taxpayer at any time partial payments for * * * or on account of any tax liens or certificates of tax sales owned or held by such county in such amount or manner and

apply such payment on account thereof in such manner as may be prescribed in such resolution". Based on the draftsman's use of "taxpayer" in the singular and tax sale "certificate" in the plural, Real Property Tax Law § 1500 (2) contemplates the circumstance, at bar, where a county holds more than one certificate on a parcel and defines payments for less than all such certificates as "partial payments". A special provision giving certain named counties the power to authorize their Treasurer to accept "partial payments" by a taxpayer on account of tax sale certificates held by the county would be unnecessary if acceptance of "partial payments" (i.e., payment of one rather than all certificates) was mandated or contemplated by the general provisions of Real Property Tax Law §§ 1010, 1022, and 1110. Since Rockland County is not one of the counties named in Real Property Tax Law § 1500, petitioners cannot benefit from this special provision.

Since the general provisions of Real Property Tax Law articles 10 and 11 relating to redemption plainly speak of redemption of property, and not of tax certificates, and the County of Rockland is not included in a special provision in Real Property Tax Law article 15 which permits partial payment for redemption purposes, we conclude that the Treasurer of Rockland County is not mandated to accept a tender of payment of the oldest of three outstanding tax sale certificates for the purpose of redemption, when no simultaneous tender is made with respect to the two subsequent outstanding tax sale certificates.

LAZER, J. P., THOMPSON and NIEHOFF, JJ., concur.

Order dated August 16, 1983 affirmed.

Judgment dated April 1, 1982 reversed, on the law, and proceeding dismissed on the merits.

The county is awarded one bill of costs.