County Acquisitions, LLC v Cruz (2025 NY Slip Op 04974)

County Acquisitions, LLC v Cruz

2025 NY Slip Op 04974

Decided on September 17, 2025

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on September 17, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

FRANCESCA E. CONNOLLY, J.P.
CHERYL E. CHAMBERS
HELEN VOUTSINAS
JAMES P. MCCORMACK, JJ.

2023-02759
 (Index No. 606739/22)

[*1]County Acquisitions, LLC, respondent,
v
Jose Cristobal Cruz, et al., appellants, et al., defendants (and a third-party action).

Leavitt, Kerson & Sehati, Forest Hills, NY (Paul E. Kerson of counsel), for appellants.
Robert Bichoupan P.C., Great Neck, NY (Carolyn Bichoupan of counsel), for respondent.

DECISION & ORDER
In an action pursuant to RPAPL article 15 to quiet title to real property, the defendants Jose Cristobal Cruz and Jose O. Cruz appeal from an order and judgment (one paper) of the Supreme Court, Nassau County (Rhonda E. Fischer, J.), dated March 7, 2023. The order and judgment granted the plaintiff's motion, in effect, for summary judgment on the complaint and declaring that it is the record holder and owner of the subject property, free and clear of all liens and encumbrances, and declared that the plaintiff is the record holder and owner of the subject property, free and clear of all liens and encumbrances.
ORDERED that the order and judgment is reversed, on the law, with costs, and the matter is remitted to the Supreme Court, Nassau County, for further proceedings in accordance herewith.
"Title 3 of article 14 of the Real Property Tax Law . . . previously allowed villages to conduct tax lien sales and convey parcels of real property by tax deed" (Joel Friedberg Trustee v Metaglo, Inc., 120 AD3d 629, 630; see Nassau Prop. Invs., LLC v Goffe, 213 AD3d 679, 679-680). Specifically, after publishing the requisite notice in a local newspaper (see former RPTL 1452), a village was permitted to conduct a public auction for the purpose of selling tax liens, and the purchasers thereof would each receive a certificate "describing the real property purchased and the sum paid therefor" (id. § 1454[2]). The owner of any property for which a tax lien was sold could thereafter redeem the property "at any time prior to the filing of a notice of pendency of an action to foreclose the lien of such taxes, or prior to conveyance by the village treasurer pursuant to [former RPTL 1464] by paying the village treasurer . . . the sum mentioned in [the tax lien] certificate with interest from the date of sale" (id. § 1456[1]; see Quinn v Wright, 72 AD3d 1052, 1053). If, however, the property was not redeemed within a period of two years after the sale, the purchaser of the tax lien certificate was permitted to commence an action to foreclose the lien or, alternatively, to submit an application to the village treasurer for a deed conveying the property to him or her (see former RPTL 1464[1], [3]; Matter of County of Nassau [Gelb—Seigel], 24 NY2d 621, 624-626; Carr Holdings, LLC v Martinez, 205 AD3d 767, 768). With regard to the application method, the purchaser was first required to mail a notice of redemption to the property owner at least six months [*2]prior to submitting the application, thereby affording the owner a final opportunity to redeem the property (see former RPTL 1464[1], [2]; Quinn v Wright, 72 AD3d at 1053). Upon receipt of an application complying with the statutory requirements, including proof of service of the notice of redemption and "surrender of the [tax lien] certificate," the village treasurer was required to issue the requested deed to the purchaser (former RPTL 1464[3]; see Matter of County of Nassau [Gelb—Siegel], 24 NY2d at 624-626). The treasurer's deed "vest[ed] in the [purchaser] an absolute estate in fee, subject, however, to all claims the village, county or state may have thereon for taxes, liens or encumbrances" (former RPTL 1464[3]), and "entitled [the purchaser] to have and possess the real property conveyed" (id. § 1464[5]; see Segar v Youngs, 45 NY2d 568, 571).
However, this statutory scheme "was repealed by the New York State Legislature pursuant to Chapter 602 of the Laws of 1993" (Joel Friedberg Trustee v Metaglo, Inc., 120 AD3d at 630). That law also repealed article 10 of the RPTL (L 1993, ch 602, § 4), which contained provisions similar to title 3 of article 14 with regard to the enforcement of county taxes (see Land v County of Ulster, 84 NY2d 613, 616-617; Matter of Elinor Homes Co. v St. Lawrence, 113 AD2d 25, 26-27, 30-31). Nonetheless, Chapter 602 of the Laws of 1993, as amended by subsequent legislation, "authorized a village to adopt a local law allowing it to continue to enforce tax liens pursuant to the otherwise repealed sections of RPTL article 14, title 3" (Joel Friedberg Trustee v Metaglo, Inc., 120 AD3d at 630; see L 1994, ch 532, § 9; cf. RPTL 1104[2]). Specifically, that law, as amended, provided, in pertinent part, that "[a] village which conducted a tax sale in 1993 pursuant to [former RPTL 1454] is hereby authorized to adopt a local law without referendum, no later than September 1, 1994, providing that the collection of taxes that shall become liens on or after January 1, 1995 and on or before December 31, 2024 shall be enforced pursuant to title 3 of article 14 of the [RPTL], as the same shall have been in effect on the last day preceding the effective date of this act" (L 2021, ch 562, § 1, amdg L 1993, ch 602, § 6, as amended). The Village of Hempstead took advantage of this legislation by enacting Code of the Village of Hempstead (hereinafter Village Code) § 119-19. The Village thereafter continued to conduct tax lien sales in accordance with the provisions of former title 3 of RPTL article 14.
In May 2019, at a public auction held pursuant to Village Code § 119-19 and former RPTL 1454, the plaintiff purchased a tax lien certificate relating to unpaid real estate taxes on a property within the Village owned by the defendants Jose Cristobal Cruz and Jose O. Cruz (hereinafter together the defendants). In June 2021, more than two years after purchasing the certificate, the plaintiff mailed a notice of redemption to the defendants pursuant to former RPTL 1464. The defendants, however, failed to redeem the property within the requisite time period. Thereafter, the Village issued a treasurer's deed conveying the property to the plaintiff, which was subsequently recorded with the Nassau County Clerk.
In May 2022, the plaintiff commenced this action pursuant to RPAPL article 15 to quiet title against, among others, the defendants. In October 2022, the plaintiff moved, in effect, for summary judgment on the complaint and declaring that it is the record holder and owner of the property, free and clear of all liens and encumbrances. The defendants opposed the motion, contending, inter alia, that as Spanish-speaking immigrants from El Salvador, they were victims of national origin discrimination in violation of Executive Law § 296(5)(a)(1), because the relevant tax notices sent to them by the Village and the plaintiff were not in the defendants' primary language, Spanish. The defendants argued that they had failed to pay the subject Village property taxes due to their purported confusion related to their lack of understanding of English. By order and judgment dated March 7, 2023, the Supreme Court granted the plaintiff's motion and declared that the plaintiff is the record holder and owner of the property, free and clear of all liens and encumbrances. The defendants appeal.
The defendants' contention that the Supreme Court erred by considering the plaintiff's motion because the plaintiff failed to specify the statutory basis thereof in the notice of motion is unavailing. The plaintiff's notice of motion and supporting papers sufficiently set forth that the plaintiff was seeking summary judgment on the complaint pursuant to CPLR 3212 and for a related declaratory judgment pursuant to CPLR 3001 (see CPLR 2214[a]; Matter of Blauman-Spinder v Blauman, 68 AD3d 1105, 1106; Frankel v Stavsky, 40 AD3d 918, 918-919).
The plaintiff demonstrated its prima facie entitlement to judgment as a matter of law on the complaint and for the requested declaratory judgment by submitting, among other things, evidence in admissible form proving that the defendants were given all the notice they were entitled to that complied with constitutional due process and statutory requirements (see Pekich v Membreno, 226 AD3d 1040, 1041-1042; Nassau Prop. Invs., LLC v Goffe, 213 AD3d at 680-681). The defendants' contention of discrimination on the basis of national origin asserted in opposition to the plaintiff's prima facie showing was properly rejected by the Supreme Court, because Executive Law § 296(5)(a)(1) is inapplicable here, as this matter pertains to the collection and enforcement of property taxes and not the deprivation of access to housing. In any event, the defendants failed to submit evidence in admissible form to support their contention (see Zuckerman v City of New York, 49 NY2d 557).
However, on appeal, the defendants contend, for the first time, that the Village's conveyance of the property to the plaintiff pursuant to the treasurer's deed constituted an unlawful taking in violation of the United States and New York State Constitutions, relying upon the United States Supreme Court's recent decision in Tyler v Hennepin County (598 US 631). The defendants argue, in effect, that they had a property interest in both the property and the equity therein. Therefore, according to the defendants, the Village's confiscation of the property and transfer of title thereto to the plaintiff, without any payment to them for the value thereof over and above the amount owed on unpaid taxes, amounted to a taking. The defendants also argue, for the first time on appeal, that the loss of equity in the property from the tax lien sale also violated the Excessive Fines Clause of the Eighth Amendment, as incorporated by the Fourteenth Amendment, as well as New York State Constitution, article I, § 5. In any event, since Tyler, which, parenthetically, also considered an excessive fines constitutional argument in a concurring opinion, was issued after the Supreme Court issued the order and judgment on appeal, we conclude that it is appropriate to consider the defendants' takings and excessive fines arguments in the interest of justice (see Gubitosi v Hyppolite, 188 AD3d 1015, 1016; Evans v New York City Tr. Auth., 179 AD3d 105, 111 n).
Both the United States and New York State Constitutions prohibit the imposition of excessive fines (see US Const 8th Amend; NY Const, art I, § 5; United States v Bajakajian, 524 US 321, 327-328). Additionally, "[t]he Takings Clause of the Fifth Amendment of the US Constitution, made applicable to the States through the Fourteenth Amendment, . . . provides that private property shall not be taken for public use, without just compensation" (American Economy Ins. Co. v State of New York, 30 NY3d 136, 155 [internal quotation marks omitted]). "The New York Constitution similarly provides that '[p]rivate property shall not be taken for public use without just compensation'" (id., quoting NY Const, art I, § 7[a]). Prior to Tyler, the Court of Appeals determined, for example, that a county's retention of surplus funds following a tax sale pursuant to former article 10 of the RPTL, among other authorities, did not constitute a taking requiring just compensation (see Sheehan v County of Suffolk, 67 NY2d 52, 58-60). This was so, according to the Court, because the property owner's "failure to redeem the property before it ha[d] been resold" constituted a "forfeiture" of the property (id. at 59). Tyler similarly involved a tax sale by a Minnesota county of a property to a third party, where the county was paid far more than the value of the taxes and kept the surplus funds, resulting in a windfall of $25,000 (see Tyler v Hennepin County, 598 US at 634-636). In contrast to Sheehan, however, the United States Supreme Court expressly rejected an argument made by the Minnesota county that the property owner "ha[d] no interest in the surplus because she constructively abandoned her home by failing to pay her taxes" (id. at 646). The Court concluded that the county "had the power to sell [the property owner's] home to recover the unpaid property taxes[,] [b]ut it could not use the toehold of the tax debt to confiscate more property than was due" (id. at 639).
This case, however, involves a somewhat different circumstance. The Village did not sell the property for an amount higher than that owed by the defendants, keeping the surplus funds for its own use. Instead, the Village sold a tax lien to the plaintiff, a private entity, and, after the defendants failed to redeem the property, conveyed title thereto to the plaintiff, allowing it to obtain a windfall. The defendants nonetheless assert that this situation constitutes a taking without just compensation pursuant to Tyler, while the plaintiff disagrees. Although Tyler did not expressly decide the issue, recent orders from the United States Supreme Court imply that the Court may view [*3]its own decision in a way that would render it applicable to the circumstances presented and, at a minimum, indicate that it is still an open question (see Nieveen v TAX 106, 311 Neb 574, 974 NW2d 15, vacated _____ US _____, 143 S Ct 2580; Continental Resources v Fair, 311 Neb 184, 971 NW2d 313, vacated _____ US _____, 143 S Ct 2580; cf. 257-261 20th Ave. Realty, LLC v Roberto, 477 NJ Super 339, 307 A3d 19, aff as mod 259 NJ 417, 327 A3d 1177). Even if Tyler stands for the proposition that the Village's issuance of the treasurer's deed to the plaintiff constituted a taking for public use, it is not necessarily clear whether the appropriate relief would be to invalidate the treasurer's deed, as opposed to, for example, permitting the defendants to pursue a claim for just compensation against the Village (cf. Knick v Township of Scott, Pennsylvania, 588 US 180, 199-202; Seawall Assoc. v City of New York, 74 NY2d 92, 115-116; Matter of Wallace v Town of Grand Is., 184 AD3d 1088, 1091).
Nonetheless, we are not in a position to decide the defendants' excessive fines and takings contentions on this appeal, since they amount to a constitutional challenge to Village Code § 119-19 and former RPTL article 14, title 3, or at least the relevant provisions thereof. Under these circumstances, the New York State Attorney General and the Village must be notified and afforded an opportunity to weigh in on the defendants' constitutional challenges before a court can render a decision (see CPLR 1012[b]; Executive Law § 71; Matter of Monserrate v Espinal, 194 AD3d 887, 888; Clement v Durban, 147 AD3d 39, 41 n, affd 32 NY3d 337). Even if we could decide these issues without such notice, it would nonetheless be prudent to permit the Supreme Court an opportunity to address them first (see People v Baumann & Sons Buses, Inc., 6 NY3d 404, 408, citing Matter of Van Berkel v Power, 16 NY2d 37, 40). Therefore, we remit the matter to the Supreme Court, Nassau County, for consideration of the defendants' constitutional challenges and any defenses thereto the plaintiff may choose to assert, after any further briefing, argument, and hearing that the court deems appropriate, and for a new determination of the plaintiff's motion thereafter (see U.S. Bank N.A. v Simon, 216 AD3d 1041, 1043; Wells Fargo Bank, N.A. v Cafasso, 223 AD3d 695, 697; Matter of County of Niagara v Shah, 122 AD3d 1240, 1244). Upon remittal, and before rendering a new determination of the plaintiff's motion, the court shall ensure that the Attorney General and the Village receive the requisite notice (see HSBC Bank USA, N.A. v Gifford, 224 AD3d 447, 452-453; 45-47-49 Eighth Ave. LLC v Conti, 220 AD3d 473, 474).
CONNOLLY, J.P., CHAMBERS, VOUTSINAS and MCCORMACK, JJ., concur.
ENTER:
Darrell M. Joseph
Clerk of the Court